## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| HYDRATION STATION USA FRANCHISE SYSTEM, LLC and VIDA-FLO USA FULFILLMENT, LLC, )<br><br>Plaintiffs, )<br>v. )<br><br>RYAN HEAVERN, BRETT MCCULLOUGH, BRIAN MCCULLOUGH, MICHAEL GAYLE, DERRICK PURDY, VIDA FLO ALABAMA, LLC, FLO WEST, LLC, HOLISTIC HYDRATION ORGANIZATION, LLC, VIDA-FLO LOUISIANA, L.L.C., and GEAUX FLEAUX, LLC, )<br><br>Defendants. ) | Civil Action<br><br>File No.:<br><br>1:19-cv-05192-LMM<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT FOR DAMAGES

Plaintiffs Hydration Station USA Franchise System, LLC ("HS-USA Franchise") and Vida-Flo USA Fulfillment, LLC ("VF-Fulfillment" and, collectively with HS-USA Franchise, "Vida-Flo") file this Second Amended Complaint for Damages against[1] Ryan Heavern, Brett McCullough, Brian

---

[1] The following former parties have been or will be dismissed from this matter by agreement of the parties or by order of the Court: Jared Christian Seaverns, Eva Heavern a/k/a Eva Schubertova, Matthew "Web" Raulston, Shawn Fobas, Matt Borah, Jason Trembley, Peter Park, Lauren Kaufman, Brett Snellgrove, Brendan Joseph Doucette, Crimson & Red Holdings, LLC, HydraLife Sandy Springs, LLC f/k/a VF Sandy Springs, LLC, HydraLife Buckhead, LLC f/k/a VF Buckhead,

McCullough, Michael Gayle, Derrick Purdy, Vida Flo Alabama, LLC, Flo West, LLC, Holistic Hydration Organization, LLC, Vida-Flo Louisiana, L.L.C., and Geaux Fleaux, LLC (collectively "Defendants").

## I. NATURE AND BASIS OF ACTION

1.    In 2012, Vida-Flo founded and continues to operate one of the first and most reputable businesses providing intravenous hydration and vitamin infusion.

2.    Due to its initial success and consumer demand, Vida-Flo started franchising its business model in 2014.

3.    Defendants are former Vida-Flo franchisees or are entities and individuals with interests in those former franchisees, who engaged in a conspiracy to drive Vida-Flo from the market to free themselves and their affiliated individuals and entities from obligations to Vida-Flo and from future competition with Vida-Flo.

4.    Once the former franchisees eliminated Vida-Flo from the market, their stated goal was to raise prices, enriching themselves at the expense of consumers.

5.    Defendants engaged in concerted tactics to drain resources from Vida-Flo with the objective of weakening Vida-Flo to such a degree that it would be unable to pursue Defendants for their numerous violations of federal and state law.

---

LLC, HydraLife Highlands, LLC f/k/a VF Highlands, LLC, REVA Investments, LLC, Moose, LLC f/k/a Vida-Flo Chattanooga, the wHydrate Group Inc., and wHydrate Fulfillment Group Inc.

6. For example, Defendants conspired to simultaneously withhold royalties and other funds franchisees were obligated to pay to Vida-Flo so that Vida-Flo would have no choice but to renegotiate with its franchisees, forgiving, and abating amounts owed under the franchise agreements, and shortly thereafter, when Vida-Flo had a reduced cash position due to these renegotiations, those franchisees unilaterally walked away from their franchise agreements.

7. Like most franchise relationships, franchisees' financial obligations to Vida-Flo are consideration primarily for benefits conferred by Vida-Flo to franchisees early in the franchise relationships, including but not limited to training, sharing confidential information unknown to competitors, business planning, branding, marketing, publicity, and site-related consultation.

8. After receiving initial benefits from the franchise relationship, Defendants simply decided that they no longer needed Vida-Flo and that, if a group of franchisees acted together, they could weaken Vida-Flo to reduce the likelihood that Vida-Flo would enforce contractual duties owed to it by the franchisees.

9. Defendants' actions have jointly and severally caused over $3,000,000 in compensatory damages, and Vida-Flo is entitled to treble and/or punitive damages pursuant to statute and due to Defendants' willfulness and maliciousness.

10. Damages suffered by Vida-Flo are much greater than the sum of damages

caused by Defendants' individual unlawful actions because Defendants' actions impeded Vida-Flo from expanding its franchisee network and obtaining investment capital at a critical time in its development.

## II. THE PARTIES

11.   Plaintiff HS-USA Franchise is a Georgia limited liability company, which owns and conducts business under the brand "Vida-Flo" which is a federally registered service mark, U.S. Reg. No. 5221191.

12.   Plaintiff VF-Fulfillment is a Georgia limited liability company.

13.   Defendant Ryan Heavern is a citizen of the State of Colorado. Mr. Heavern has an ownership interest in Flo West, LLC ("Flo West"), which operated a Vida-Flo location at 100 N. Main Street, Unit 104, Breckenridge, Colorado 80424 (the "Breckenridge Location"), now known as "Elite IV Lounge."

14.   Defendant Brett McCullough is a citizen of the State of Louisiana. Brett McCullough has an ownership interest in Vida-Flo Louisiana, L.L.C. ("Vida-Flo Louisiana"), which operated a Vida-Flo location at 11445 Coursey Boulevard, Suite B, Baton Rouge, Louisiana 70816 (the "Baton Rouge Location"), now known as Geaux Fleaux, LLC ("Geaux Fleaux").

15.   Defendant Brian McCullough is a citizen of the State of Louisiana. Brian McCullough has an ownership interest in Vida-Flo Louisiana, which operated the

Baton Rouge Location, now known as Geaux Fleaux.

16.   Defendant Michael Gayle is a citizen of the State of Alabama. Mr. Gayle has an ownership interest in Vida Flo Alabama, LLC ("Vida Flo Alabama") which operated a Vida-Flo location at 796 Montgomery Highway, Suite 100, Birmingham, Alabama 35216 (the "Birmingham Location"), now known as Holistic Hydration Organization, LLC ("Holistic Hydration").

17.   Defendant Derrick Purdy is a citizen of the State of Alabama. Mr. Purdy has an ownership interest in Vida Flo Alabama, which operated the Birmingham Location, now known as Holistic Hydration.

18.   Defendant Vida Flo Alabama is an Alabama limited liability company.

19.   Defendant Flo West is a Colorado limited liability company.

20.   Defendant Holistic Hydration is an Alabama limited liability company.

21.   Defendant Vida-Flo Louisiana is a Louisiana limited liability company.

22.   Defendant Geaux Fleaux is a Louisiana limited liability company.

### III. JURISDICTION AND VENUE

23.   This Court has subject matter jurisdiction over Vida-Flo's federal claims pursuant to 15 U.S.C. §§ 1114, 1121, 18 U.S.C. § 1836, and 28 U.S.C. §§ 1331, 1337, 1338, and 2201 because this action arises under the Federal Lanham Act, 15 U.S.C. §§ 1051 et seq., the Sherman Antitrust Act, 15 U.S.C. §§ 1 et seq., and

the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq., in addition to state statutory and common law claims.

24. Defendants are subject to personal jurisdiction in this Court because Defendants purposefully availed themselves of the benefits of doing business in the State of Georgia by (i) executing Vida-Flo franchise agreements with HS-USA Franchise, detailed below, which contain Fulton County, Georgia venue-selection provisions; (ii) operating Vida-Flo franchises pursuant to Vida-Flo franchise agreements; (iii) conspiring to breach and breaching Vida-Flo franchise agreements, and/or (iv) by creating or consisting of entities that profited from Defendants' misuse, disclosure, and theft of trade secrets and intellectual property that belong to Vida-Flo. Defendants have transacted business in Georgia, are committing tortious acts in Georgia, and have wrongfully caused Vida-Flo substantial injury in Georgia.

a. Flo West executed a Franchise Agreement with Vida-Flo dated April 15, 2015 for the Breckenridge Location. Under Section 22 of the Franchise Agreement, the parties consent to jurisdiction in the state and federal courts of Fulton County, Georgia for violations of Sections 14 and 17 of that agreement. The Franchise Agreement includes Georgia venue-selection and choice of law provisions at Sections 22 and 24.1.

6

b.  Vida-Flo Louisiana executed a Franchise Agreement with Vida-Flo dated November 6, 2015 for the Baton Rouge Location. The Franchise Agreement includes venue-selection and choice of law provisions whereby the parties consent to jurisdiction in the state and federal courts of Fulton County, Georgia.

c.  Vida Flo Alabama executed a Franchise Agreement with Vida-Flo dated May 16, 2016 for the Birmingham Location. The Franchise Agreement includes venue-selection and choice of law provisions whereby the parties consent to jurisdiction in the state and federal courts of Fulton County, Georgia.

25.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to Vida-Flo's claims occurred in this district, and Defendants are subject to jurisdiction in this district.

## IV. FACTUAL BACKGROUND

26.  HS-USA Franchise grants franchises to qualified persons for the operating of a "Vida-Flo" franchised business, which employs a Vida-Flo branded proprietary system of operating a hydration therapy business offering intravenous hydration, including certain vitamins and minerals (the "System").

27.  The System is characterized by, among other things, uniform standards and procedures for business operations; trade secrets and confidential information; procedures and strategies for sales, marketing, advertising and promotions;

business techniques; a confidential and proprietary Vida-Flo Operations Manual (the "Manual"); supplier relationships; training courses; and ongoing support and education.

28.   Vida-Flo franchisees are licensed to use trademarks, service marks, logos, designs and materials, including the following service marks:

    a.   U.S. Reg. No. 5221191 for VIDA-FLO, registered on the Principal Register of the U.S. Patent and Trademark Office on June 3, 2017, in International Class 044, for medical services; therapeutic services, namely, hydration therapy;

    b.   U.S. Reg. No. 5878620 for VIDA FLO ON THE GO, registered on the Principal Register of the U.S. Patent and Trademark Office on October 8, 2019, in International Class 044, for medical services; therapeutic services, namely, hydration therapy.

29.   Vida-Flo provides additional trade names, logos, slogans, and designs for use by Vida-Flo franchisees in their franchised businesses. The registered service marks and such additional trade names, logos, slogans, and designs are collectively referred to herein as the "Marks."

30.   Vida-Flo trains franchisees in the use and operation of its proprietary system, including imparting trade secrets and confidential information, and

8

requires its franchisees to operate their Vida-Flo franchised businesses in accordance with written franchise agreements.

31.   Vida-Flo has invested considerable time, effort, and resources to develop the business methods, specialized services, trade secrets, confidential information, Marks, advertising materials, marketing strategies, brand value, supplier relationships, and training techniques for use in Vida-Flo franchised businesses.

32.   Vida-Flo has, for instance developed a proprietary software platform, the "Wellness Program Assessment", for use in developing a service plan specifically tailored for each customer based on his or her input and treatment goals. Vida-Flo invested significant time and financial resources in developing the Wellness Program Assessment, and the program is an integral part of Vida-Flo's Trade Secrets (defined in the following Paragraph).

33.   Vida-Flo's Manual, specifications, supplier relationships, pricing, sales techniques, customer relationship practices, uniform standards and procedures for business operations, procedures and strategies for sales, marketing, advertising and promotions, testing processes, supplier relationships, client relationships, customer lists, treatment protocols, and training curricula and methods, in addition to other non-public valuable Vida-Flo information, all of which are provided to and shared with franchisees, are proprietary trade secrets and confidential information

belonging to Vida-Flo. All proprietary, confidential, and trade secret information, including but not limited to that disclosed to or used by franchises in the operation of the franchised business, is collectively referred to as "Trade Secrets."

34.   Trade Secrets and System components are licensed to Vida-Flo franchisees and authorized for use only pursuant to the Franchise Agreement between Vida-Flo and each Vida-Flo franchisee. Trade Secrets, the Manual, and other System components are protected from unauthorized use, or disclosure pursuant to the terms of the Franchise Agreement and collateral, but vitally important, agreements: a Nondisclosure, Nonsolicitation and Noncompetition Agreement ("NDA") and a Confidentiality Agreement. The Franchise Agreement and collateral agreements are signed by Vida-Flo franchisees and their owners, respectively.

35.   Typically, Vida-Flo franchisees would not have any significant knowledge about how to operate a hydration therapy business without the Trade Secrets and other documentation and training provided by Vida-Flo, especially since Vida-Flo was the first hydration clinic in the United States.

## A. The Franchise Agreements

36.   On April 15, 2015, Vida-Flo entered into its first Franchise Agreement with Flo West for the Breckinridge Location, and subsequently, Vida-Flo entered into virtually identical Franchise Agreements with a number of other franchisees,

including Vida-Flo Louisiana for the Baton Rouge Location, on November 6, 2015, and Vida Flo Alabama for the Birmingham Location on May 16, 2016.

37. True and accurate copies of the forgoing Franchise Agreements (the "Operative Franchise Agreements") are attached as Exhibits A-C, respectively.

38. In connection with the Operative Franchise Agreements, franchise operators executed personal guaranties, nondisclosure agreements, and confidentiality agreements, as follows:

a.  Mr. Heavern executed a personal guaranty, NDA, and confidentiality agreement for the Breckenridge Location;

b.  Brian McCullough executed a personal guaranty, NDA, and confidentiality agreement for the Baton Rouge Location;

c.  Mr. Gayle and Mr. Purdy each executed a personal guaranty, NDA, and confidentiality agreement for the Birmingham Location;

39. Among other things, the Operative Franchise Agreements provide that:

a.  Vida-Flo franchisees are unconditionally obligated to pay 7% royalties in addition to other fees required under the Operative Franchise Agreements for at least ten years (Sections 4 and 13);

b.  Vida-Flo franchises are excused from performance only after providing written notice of a material breach by Vida-Flo and allowing Vida-Flo 90

11

days to cure the purported breach (Section 20.1);

c.   Vida-Flo provides franchisees with a confidential Manual, startup package, and substantial assistance with guidance, training, standards, marketing, online presence, supply sourcing, research and development, and site selection (Sections 5, 6, 7, 8, and 12); and

d.   Vida-Flo franchisees are subject to contractual limitations, in addition to those at law generally, on disclosure, solicitation, competition information and assistance provided by Vida-Flo, which extends to family members, employees, and manager (Sections 2, 8, 14, 17, 21).

40.   Sections 14 of the Operative Franchise Agreements contain a restrictive covenant. Under Section 14.2 of the Operative Franchise Agreements, Defendants agreed: (i) that neither it or its owners would use Vida-Flo's "Know-how in any business or capacity other than the operation of [the] business pursuant to this Agreement"; (ii) that they would "maintain the confidentiality of the Know-how at all times"; (iii) that they would not "make unauthorized copies of any documents containing any Know-how"; (iv) that they would "take all reasonable steps . . . to prevent unauthorized use or disclosure of the Know-how"; and (v) that they would "stop using the Know-how immediately upon the expiration, termination or Transfer of this Agreement and will stop using the Know-how

immediately at the time he or she ceases to be an Owner."

41. In Attachment A to each of the Operative Franchise Agreements, "Know-how" is defined as all of Vida-Flo's:

> "trade secrets and other proprietary information relating to the development, construction, marketing and/or operation of a Vida-Flo clinic, including but not limited to methods, techniques, specifications, medical treatments, procedures, policies, marketing strategies and information comprising the System and the Manual."

42. Under Section 14.3 of each of the Operative Franchise Agreements, Defendants agreed that neither they nor their owners would unfairly compete with Vida-Flo by engaging in the following "Prohibited Activities":

> (i) owning, operating or having any other interest (as an owner, partner, director, officer, employee, manager, consultant, shareholder, creditor, representative, agent or in any similar capacity) in any Competitive Business, other than owning an interest of five percent (5%) or less in a publicly traded company that is a Competitive Business; (ii) diverting or attempting to divert any business from us (or one of our affiliates or franchisees), including any attempt to cause a Vida-Flo member to cancel their existing membership with another clinic and sign up as a member at your Clinic; or (iii) inducing (a) any of our employees or managers (or those of our affiliates or franchisees) to leave their position or (b) any customer of ours (or of one of our affiliates or franchisees) to transfer their business to you or to any other person that is not then a franchisee of ours.

43. Under Section 14.4 of each of the Operative Franchise Agreements, the restriction against Prohibited Activities applies for two years following the termination of the agreement, and Defendants, and their owners agreed to not

have an interest in any Competitive Business (a business that generates at least 50% of its gross revenue from hydration therapy services) within 15 miles of the Breckenridge Location, Baton Rouge Location, and Birmingham Location, or within 15 miles of any then existing or contemplated franchise.

44. The NDAs executed by the individual signatories all contain restrictive covenants identical in substance to the language in Sections 14.2, 14.3, and 14.4 of each Operative Franchise Agreement.

45. In his Personal Guaranty, Mr. Heavern personally and unconditionally guaranteed obligations under the Operative Franchise Agreement for the Breckenridge Location.

46. In his Personal Guaranty, Mr. McCullough personally and unconditionally guaranteed obligations under the Operative Franchise Agreement for the Baton Rouge Location.

47. In his Personal Guaranty, Mr. Gayle personally and unconditionally guaranteed obligations under the Operative Franchise Agreement for the Birmingham Location.

48. Confidentiality Agreements likes those listed in Paragraph 63 above contain language identical in substance to Section 14.2. of each Operative Franchise Agreement.

49. Defendants agreed that the aforementioned restrictive covenants are reasonable and waived any right to challenge their terms as being "overly broad, unreasonable or otherwise unenforceable," as stated in Section 14.7 of each Operative Franchise Agreement and repeated in the ancillary agreements.

50. Operation of Vida-Flo franchised businesses and use of the Vida-Flo intellectual property was authorized only by, and in compliance with, the Operative Franchise Agreements, including attachments. "Intellectual Property" under Attachment A to each Operative Franchise Agreement, means "collectively or individually, Marks, Copyrights, Know-how, System and Improvements."

## B. The Conspiracy

51. In 2017, Defendants believed Vida-Flo's negotiated termination of a problematic franchisee demonstrated that, by ceasing all payment obligations under the Operative Franchise Agreements, franchisees could walk away from their obligations to Vida-Flo.

52. In or around November 2017, Defendants initiated or solidified their conspiracy on a conference call (the "November 2017 Call") joined, among others, by Defendants or individuals who are affiliated with Defendants.

53. Upon information and belief, the November 2017 Call included Mr. Heavern (affiliated with Flo West), Brett and/or Brian McCullough (affiliated

with Vida-Flo Louisiana and Geaux Fleaux), and Mr. Gayle and possibly Mr. Purdy (affiliated with Vida Flo Alabama and Holistic Hydration).

54. Based on evidence obtained from participants in the November 2017 Call, Defendants expressly discussed a strategy to "bankrupt Vida-Flo."

55. On November 5, 2017, as an overt act in furtherance of the conspiracy, Defendants Brian McCullough, Brett McCullough, Mr. Gayle, and Mr. Heavern, on behalf of Defendants Vida-Flo Louisiana, Vida Flo Alabama, and Flo West, respectively, sent two similar letters to Vida-Flo investors, dated November 1, 2017 and November 3, 2017, defaming Vida-Flo and its management.

56. True and correct copies of the November 1, 2017 and November 3, 2017 letters are attached hereto as Exhibit D and Exhibit E, respectively.

57. Thereafter, as a further overt act in furtherance of the conspiracy, each of the franchisees associated with Defendants who participated in the November 2017 Call stopped remitting royalties and other funds they were contractually obligated to pay to Vida-Flo and ignored the 90-day notice and cure provision in the Operative Franchise Agreements.

58. Because Vida-Flo valued its business relationship with franchisees, Vida-Flo sought to listen to and resolve the concerns of the defaulting franchisees, and while Vida-Flo's conversations with each franchisee was separate, all of the

defaulting franchisees made virtually identical demands, which included (a) forgiveness of royalties and other arears that accrued since the concerted default and (b) abatement of the royalty rate for a period of time going forward.

59.   The terms of Vida-Flo's conversations with the defaulting franchisees were memorialized by the parties in separate agreements entitled Amendment to Vida-Flo Franchise Agreement (collectively, the "Amendments"), each of which contained a confidentiality clause.

60.   Vida-Flo entered into an Amendment to Franchise Agreement with Flo West on March 6, 2018 and an Amendment to Franchise Agreement with Vida-Flo Louisiana, on April 13, 2018.

61.   These Amendments are attached hereto as Exhibits F and G, respectively.

62.   Within a matter of months, as overt acts in furtherance of the conspiracy, Defendants who entered into the Amendments breached those Amendments and the Operative Franchise Agreements, by again withholding payment with no notice and opportunity to cure, for an increasingly ridiculous list of purported concerns.

63. Defendants who entered into the Amendments also breached the Amendments' confidentiality provisions by continuing to communicate unimpeded with other Defendants in furtherance of the ongoing conspiracy to "bankrupt Vida-Flo."

64. Upon information and belief, the franchisees who entered into Amendments knew at the time of execution that they fraudulently intended to breach these agreements.

65. In furtherance of the conspiracy and in violation of the Amendments, the franchisees who entered into Amendments communicated with other franchisees to encourage continued use of a blueprint for collectively walking away from their obligations to Vida-Flo, which included ceasing payment of royalties and other payments to Vida-Flo with no notice and opportunity to cure.

66. In late 2018 and early 2019, as additional overt acts in furtherance of the conspiracy Vida Flo Alabama rebranded the Birmingham Location to Holistic Hydration, Flo West rebranded the Breckenridge Location to Elite IV Lounge, and Vida-Flo Louisiana rebranded the Baton Rouge Location to Geaux Fleaux, all operating at the same location as their Vida-Flo franchised businesses without any material changes in the trade dress or operations.

67. Defendants associated with hijacked locations are diverting business from Vida-Flo franchised businesses to their competitive businesses, using the Marks, the System, the Manual, and Vida-Flo trade dress and trading on the Vida-Flo name, reputation, and goodwill. These Defendants have misappropriated the goodwill associated with the Vida-Flo System and their Vida-Flo franchised

businesses by transferring their entire Vida-Flo franchise businesses, as a going concern, to their competitive business ventures.

68. As further overt acts in furtherance of the conspiracy, Defendants contacted and solicited their former Vida-Flo customers through their new, competitive business ventures.

69. Defendants associated with highjacked locations engaged and continue to engage in conduct that creates a likelihood of confusion or misunderstanding as to their services and those offered by Vida-Flo.

70. Defendants' actions breach numerous provisions of the Operative Franchise Agreement, Attachments to the Operative Franchise Agreements, the Personal Guaranties, the NDAs, and the Amendments, and constitute trademark infringement and dilution under the Lanham Act; violate the Defend Trade Secrets Act; violate the Georgia Deceptive Trade Practices Act; and offend other Georgia law, all as set forth in greater detail below.

71. Defendants' conspiracy against Vida-Flo was the proximate cause of Vida-Flo's termination or suspension of any Operative Franchise Agreement.

72. Mr. Heavern directed his agents or entities under his direct control to a baseless lawsuit against Vida-Flo and filed at least two baseless and false police reports against Vida-Flo to further Defendants' conspiracy to bankrupt Vida-Flo.

73.  As further outlined in the individual counts, Defendants, individually and through their conspiracy have damaged Vida-Flo.

## COUNT I
## Violations of the Sherman Act
## (Against all Defendants)

74.  Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

75.  Defendants agreed (explicitly or tacitly) to eliminate Vida-Flo as a competitor in the intravenous hydration market by participating in an unlawful horizontal group boycott in violation of Section 1 of the Sherman Act.

76.  Among other collaborative efforts, Defendants participated directly or indirectly in the November 2017 Call, at which time Defendants made or furthered an explicit agreement to "bankrupt Vida-Flo."

77.  Defendants are, or are currently associated with, direct competitors of Vida-Flo, and the purpose of Defendants' conspiracy to "bankrupt Vida-Flo" was to remove Vida-Flo as a competitor in the intravenous hydration market.

78.  Defendants' conspiracy to "bankrupt Vida-Flo" was a three-stage plan, and Defendants' actions in carrying out this plan constitutes parallel conduct further proving Defendants' conspiracy to participate in a horizontal group boycott.

79.  First, without complying with contractual notice-and-cure provisions,

franchisees associated with Defendants alleged virtually identical grievances against Vida-Flo, and the franchisees used these grievances as a pretext to suddenly stop paying any funds owed to Vida-Flo pursuant to the Operative Franchise Agreements, including monthly royalty payments.

80.   Second, franchisees associated with Defendants conditioned resumption of payments to Vida-Flo on, among other things, Vida-Flo's agreement to forgive arrears and abate the royalty rate going forward.  Defendants orchestrated this with the intent to drain Vida-Flo of financial resources and with the intent to repeat this process if necessary.

81.   Third, after draining Vida-Flo of financial resources and presumably crippling Vida-Flo's ability to legally pursue Defendants, Defendants concluded the conspiracy by collectively walking away from ten-year Operative Franchise Agreements that generated a significant portion of Vida-Flo's operating capital. Defendants orchestrated this collective walkaway with the intent to destroy Vida-Flo's ability to continue operations and compete with Defendants.

82.   In addition, Defendants retained counsel and/or authorized retention of counsel to continue harassment of Vida-Flo and thereby increase financial strain on Vida-Flo with the purpose of eliminating Vida-Flo as their competitor in the marketplace.

83.  All Defendants communicated extensively amongst themselves and with other franchisees about collaborative tactics and strategies for increasing financial strain on Vida-Flo with the purpose of eliminating Vida-Flo as a competitor of Franchisees participating in the conspiracy.

84.  Paragraphs 51 through 72 provide a more extensive description of the conspiracy and overt actions of certain Defendants in furtherance thereof.

85.  As a direct and proximate result of Defendants' violation of Section 1 of the Sherman Act, Plaintiffs have incurred over $3,000,000 in compensatory damages plus treble damages and attorneys' fees as provided by law.

## COUNT II
## Violations of the Lanham Act
## (Against All Defendants)

86.  Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

87.  Franchisees associated with Defendants were licensed to use the Marks strictly as set forth in the Operative Franchise Agreements. These franchisees and their owners contractually acknowledged that any use of the Marks not authorized in the Operative Franchise Agreements or in writing by Vida-Flo constituted unfair competition and infringement of Vida-Flo's rights in the Marks, as set forth in § 14 of the Operative Franchise Agreement.

88. Notwithstanding the clear terms of the Operative Franchise Agreements to the contrary, during the term of the Agreements, Defendants employed the Marks, or colorable imitations thereof, to promote their competitive business ventures, to transition their entire Vida-Flo franchised businesses to their competitive business entities, and to misappropriate the goodwill in the Marks.

89. In addition to other conduct, some of which is described above, Defendants combined the Marks with those of Defendants' competitive ventures in their websites, on Facebook and in other social media, and on signage at its places of business; and appropriated Vida-Flo advertisements and communications to their competing ventures.

90. Subsequent to termination, Defendants persisted in their misuse, misappropriation and infringement of the Marks, as set forth above.

91. The wrongful actions of Defendants are likely to cause confusion to customers and potential customers of Vida-Flo and to the public generally, by representing, suggesting or implying that Defendants' competitive businesses are Vida-Flo businesses, or are associated with, sponsored by or endorsed by Vida-Flo.

92. The actions of Defendants falsely designate Vida-Flo as the origin, sponsor, or endorser of the services of Defendants' competitive businesses, a violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93. In addition, Defendants—none of whom had any prior experience with retail or healthcare—continued to operate retail healthcare businesses identical to the businesses they ran as Vida-Flo franchisees or their affiliates, using the following proprietary processes and information acquired from Vida-Flo: trade dress markings and style, interior design of retail area and treatment rooms, medical supply sourcing strategies and processes, membership programs and models, package names and contents, pricing structures, revenue and profitability models, and vendor relationships including pricing negotiated by Vida-Flo, and these intellectual property interests are described in more extensive detail in paragraphs 26 through 35.

94. The wrongful actions of Defendants constitute an infringement of Vida-Flo's rights in and to the Marks, a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

95. Defendants' Lanham Act violations have caused and continue to cause injury and damage to Vida-Flo, the Marks, and Vida-Flo's franchisees. These injuries include loss of income from customers of Defendants' former Vida-Flo businesses, loss of business opportunities, adverse effects on the integrity of the Vida-Flo proprietary system, loss of goodwill associated with the Marks, and loss of client relationships. In addition, Defendants' infringements and false designation

of origins or associations adversely impact the actual or potential revenues of other Vida-Flo franchisees, due to consumer confusion. Damages to Vida-Flo and the Marks impose on any new Vida-Flo franchisee the burden of overcoming the negative effects of Defendants' implicit representation that Vida-Flo has voluntarily withdrawn from the market or has sold out to competitors, making it extremely difficult for another Vida-Flo franchisee to operate in the affected business territories. These damages and injuries are amplified due to Defendants' control of territories in the Kennesaw, Birmingham, Baton Rouge, Breckenridge, and the Atlanta metropolitan area.

96. Vida-Flo is entitled to recover actual damages caused by Defendants' violations, including lost profits and loss of business value, a reasonable royalty rate, and/or disgorgement of all profits attributable to Defendants' acts of infringement and false designation of origin, together with costs of the action, pursuant to 15 U.S.C. § 1117(a).

97. The willful actions of Defendants make this an exceptional case, authorizing attorneys' fees from Defendants, pursuant to 15 U.S.C. § 1117(a).

## COUNT III
### Violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832 et seq. and O.C.G.A. § 10-1-760 et seq.
### (Against all Defendants)

98. Vida-Flo incorporates by reference the allegations set forth in the

preceding paragraphs of the Complaint as if fully repeated and restated herein.

99.  Vida-Flo imparted Trade Secrets that are an integral part of the Vida-Flo proprietary system to Defendants pursuant to the Franchise Agreements. Vida-Flo owns its Trade Secrets and other Intellectual Property.

100. Trade Secrets constitute trade secrets within the meaning of the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. §§ 1839(3). The Trade Secrets are a valuable part of the Vida-Flo System, their development and possession by Vida-Flo affords the System an advantage over its competition, and the information is not generally known or readily ascertainable by proper means by third parties.

101. Vida-Flo's Trade Secrets also constitute trade secrets within the meaning of the Georgia Secrets Act ("GTSA"), O.C.G.A. § 10-1-760. The information is a valuable part of the Vida-Flo System, its possession by Vida-Flo affords the Vida-Flo System an advantage over its competition, and the information is not generally known or readily ascertainable by proper means.

102. Vida-Flo employs means reasonable under the circumstances to protect its Trade Secrets from misappropriation or disclosure to persons or entities not authorized to receive them. Vida-Flo's server is password protected; all Vida-Flo employees are issued specific log-in credentials that must be used to access proprietary information, including Vida-Flo's Trade Secrets. Vida-Flo also

requires employees and consultants to execute non-disclosure agreements. These safeguards ensure that unauthorized persons cannot access Vida-Flo Trade Secrets.

103. Vida-Flo also employs means reasonable under the circumstances to protect the Trade Secrets that are licensed to Vida-Flo franchisees as a part of the System. Vida-Flo's Trade Secrets are imparted to franchisees only under the protection of the Franchise Agreement, which obligates each franchisee to maintain absolute confidentiality of the Trade Secrets during and following the term of the franchise; not duplicate or make unauthorized copies of the Trade Secrets; not use Vida-Flo's Trade Secrets for the benefit of any business other than the franchisee's Vida-Flo franchise; and adopt all reasonable measures to protect the Trade Secrets, including measures prescribed by Vida-Flo. In addition, the Manual is loaned to a Vida-Flo franchisee. During the term of the franchise, the franchisee is obligated to only share information from the Manual with persons authorized by Vida-Flo. Employees of Vida-Flo franchisees are only permitted to give their employees the minimum amount of information and material from the Manual that is necessary to enable them to perform their assigned tasks On expiration or termination of the Vida-Flo franchise, a franchisee is required to return the Manual and all Know-how to Vida-Flo and delete or destroy all copies of the Manual and any Know-how from the franchisee's computers and electronic

storage media. In addition, individuals associated with a franchisee are required to execute nondisclosure agreements to protect Vida-Flo's Trade Secrets.

104. The Vida-Flo System is a nationwide system with Vida-Flo franchisees in three states (not including the three states in which Defendants operated Vida-Flo franchises) that are licensed by Vida-Flo to operate franchised businesses in which the Trade Secrets are put to use. The Trade Secrets are thus employed in, and an integral part of, operations in interstate commerce.

105. Vida-Flo's Trade Secrets were divulged to Defendants under license, namely the Franchise Agreements, which strictly limited their use and prohibited unauthorized use, transfer or disclosure, as described above. Defendants' misappropriation, disclosure, and unauthorized use of Vida-Flo's Trade Secrets breached Defendants' duty to maintain secrecy and constitutes improper means within the meaning of the DTSA, 18 U.S.C. § 1839(6).

106. With intent to misappropriate and use Vida-Flo's Trade Secrets for their personal benefit, in violation of their contractual duty to maintain secrecy of Vida-Flo's Trade Secrets, and intending or knowing that the wrongful conduct would injure Vida-Flo, Defendants:

   a.  Appropriated Vida-Flo's Trade Secrets for use in Defendants' competitive business ventures Geaux Fleaux, Holistic Hydration, and Elite IV Lounge, without

authorization.

b. Communicated and/or conveyed Vida-Flo's Trade Secrets to Defendants' competitive business ventures without authorization.

c. Possess Vida-Flo's Trade Secrets, knowing same to have been appropriated to Defendants' competitive business venture without authorization.

107. In addition, Defendants—none of whom had any prior experience with retail or healthcare—continue to operate retail healthcare businesses identical to the businesses they ran as Vida-Flo franchisees or their affiliates, using the following proprietary processes and information acquired from Vida-Flo: medical supply sourcing strategies and processes, membership programs and models, package names and contents, pricing structures, revenue and profitability models, and vendor relationships including pricing negotiated by Vida-Flo, and these intellectual property interests are described in more extensive detail in paragraphs 26 through 35.

108. Defendants' wrongful actions constitute the theft of Trade Secrets, a violation of the DTSA, 18 U.S.C. § 1832.

109. Defendants' wrongful actions constitute the misappropriation of Vida-Flo's Trade Secrets, as defined by GTSA, O.C.G.A. § 10-1-761.

110. Defendants' violations of the DTSA and GTSA have caused and continue

to cause injury and damage to Vida-Flo, the Marks, the Vida-Flo System, and Vida-Flo franchisees. These damages include loss of income from customers of Defendants' Vida-Flo business, loss of business opportunities, adverse effects on the integrity of the Vida-Flo System, loss of goodwill associated with the Marks, loss of client relationships, and compromise or loss of Vida-Flo's valuable Trade Secrets and confidential information.

111. In addition to these actual losses, Defendants' misappropriation, theft, and wrongful use of Vida-Flo's Trade Secrets have resulted in unjust enrichment to Defendants in amounts to be determined.

112. Defendants' conduct was undertaken in bad faith.

113. Vida-Flo is entitled to recover its actual damages and/or a reasonable royalty rate from Defendants, in amounts to be determined, and to recover the unjust enrichment realized by Defendants from the theft, misappropriation, use, and disclosure of Vida-Flo's Trade Secrets pursuant to 18 U.S.C. § 1836(b)(3)(A), together with its attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

114. Vida-Flo is entitled to recover its actual damages from Defendants, in amounts to be determined, and recover the unjust enrichment realized by Defendants from the theft, misappropriation, use and disclosure of Vida-Flo's Trade Secrets pursuant to O.C.G.A. § 10-1-763, together with its attorneys' fees

pursuant to O.C.G.A. § 10-1-764.

## COUNT IV
## Violations of the Georgia Deceptive Trade Practices Act,
## O.C.G.A. § 10-1-370 et seq.
## (Against all Defendants)

115. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

116. Defendants have engaged in the following deceptive trade practices in the course of operating their business ventures Geaux Fleaux, Holistic Hydration, and Elite IV Lounge:

a. Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b. Caused likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

c. Disparaged the goods, services, or business of another by false or misleading representation of fact;

d. Made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and

e. Engaged in other conduct that similarly creates a likelihood of confusion or of misunderstanding.

117. Defendants have caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services offered by their competing Geaux Fleaux, Holistic Hydration, and Elite IV Lounge, businesses through their website, social media, advertisements, trade dress, and communications to the public.

118. Defendants have caused likelihood of confusion or misunderstanding as to the affiliation, connection, or association with or certification by Vida-Flo and the Vida-Flo franchise system through their website, social media, advertisements, trade dress, and communications to the public.

119. Defendants have disparaged the business of Vida-Flo through their public "rebranding" efforts and through their campaign of defamation.

120. Defendants have made false or misleading statements of facts concerning reasons for price reductions by advertising to the public that their pricing changes, which were unauthorized, were a byproduct of their rebranding, which was unauthorized.

121. Defendants have engaged in other conduct that caused a likelihood of confusion or misunderstanding by their intentional misrepresentation of the circumstances under which their Franchise Agreements were terminated.

122. In addition, Defendants—none of whom had any prior experience with

retail or healthcare—continue to operate retail healthcare businesses identical to the businesses they ran as Vida-Flo franchisees or their affiliates, using the following proprietary processes and information acquired from Vida-Flo: trade dress markings and style, interior design of retail area and treatment rooms, medical supply sourcing strategies and processes, membership programs and models, package names and contents, pricing structures, revenue and profitability models, and vendor relationships including pricing negotiated by Vida-Flo, and these intellectual property interests are described in more extensive detail in paragraphs 26 through 35.

123. Vida-Flo is entitled to recover actual damages caused by Defendants' violations, including lost profits and loss of business value, a reasonable royalty rate, and/or disgorgement of all profits attributable to Defendants' acts, plus exemplary damages and attorneys' fees.

## COUNT V
### Fraud
### (Against all Defendants)

124. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

125. Defendants made statements of material fact to Vida-Flo with knowledge that the statements were false or with reckless disregard for whether the statements

were false, including falsely representing that franchisees associated with Defendants intended to comply with the Amendments after Defendants initiated their conspiracy to "bankrupt Vida-Flo."

126. Defendants also knowingly or recklessly made material statements of fact and omitted facts necessary to make the statements accurate and not misleading in the circumstances in which the statements were made, including negotiating the Amendments without informing Vida-Flo of their intent to "bankrupt Vida-Flo."

127. In addition, Defendants Ryan Heavern, Brett McCullough, and Brian McCullough authorized Flo West, LLC and Vida-Flo Louisiana, L.L.C. to enter into the Amendments described in paragraphs 59 through 65 with the present intention of failing to carryout obligations contained therein.

128. Defendants at various times made representations to Vida-Flo that they were committed to carrying out their direct or indirect contractual obligations as franchisees or affiliates thereof when in fact they were participating in the conspiracy alleged in Count I of this Amended Complaint.

129. Defendants made these misstatements or omissions with the intention of causing Plaintiffs to rely upon the statements or omissions, and these misstatements or omissions were overt acts in furtherance of an explicit or tactic agreement to act in concert to unlawfully injure Vida-Flo.

130. Plaintiffs reasonably relied on these misstatements or omissions and acted or refrained from acting based on this reliance

131. As a direct and proximate result of their reliance on Defendants' misrepresentations or omissions, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT VI**
**Conversion**
**(Against all Defendants)**

132. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

133. Vida-Flo is the lawful owner of confidential information provided to Defendants for the purposes of operating Vida-Flo franchises and the lawful owner of royalties generated from Defendants' use of this information.

134. Defendants—none of whom had any prior experience with retail or healthcare—continue to operate retail healthcare businesses identical to the businesses they ran as Vida-Flo franchisees or their affiliates, using the following proprietary processes and information acquired from Vida-Flo: trade dress markings and style, interior design of retail area and treatment rooms, medical supply sourcing strategies and processes, membership programs and models, package names and contents, pricing structures, revenue and profitability models,

and vendor relationships including pricing negotiated by Vida-Flo.

135. Defendants are also retaining revenue that lawfully belongs to Vida-Flo as royalties or other contractual payments derived from exclusive sales areas and proprietary processes and information that belong to Vida-Flo.

136. Defendants have converted this information and revenue to their own use through overt acts in furtherance of an explicit or tactic agreement to act in concert to unlawfully injure Vida-Flo.

137. As a direct and proximate result of Defendants' conversion, Vida-Flo has been damaged in an amount to be determined at trial.

<u>**COUNT VII**</u>
**<u>Tortious Interference with Contractual and Business Relations</u>**
**<u>(Against all Defendants)</u>**

138. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

139. The franchisees explicitly and tacitly agreed to act in concert to unlawfully violate their obligations to Vida-Flo, including obligations in Defendants' Operative Franchise Agreements and Amendments, for the purpose of bankrupting Vida-Flo, Defendants acted without privilege, purposefully, and with malicious intent to injure Vida-Flo by inducing these breaches.

140. As overt acts in furtherance of the conspiracy, Vida-Flo franchisees and

their affiliated persons and entities interfered with Vida-Flo's business and contractual relationships with other franchisees and customers, including but not limited to franchisees associate with former Defendants who have been dismissed from this case.

141. Defendants also interfered with Vida-Flo's business and contractual relationships with its investors by sending defamatory correspondence with the intent to damage and disrupt Vida-Flo's relationships with investors.

142. By wrongfully operating competitive businesses in Vida-Flo's exclusive sales areas, Defendants interfered with Vida-Flo's business and contractual relationships with former and prospective customers;

143. By interfering with the contracts or potential relationships between Vida-Flo and its franchisees, investors, and customers, Defendants acted without privilege, purposefully, and with malicious intent to injure Vida-Flo by inducing these breaches and interfering with these business relationships.

144. As a direct and proximate result of Defendants' interference with Vida-Flo's contractual and business relations, Vida-Flo has been damaged in an amount to be determined at trial.

## COUNT VIII
## Breaches Of Contract
## (Against all Defendants)

145. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

146. HS-USA Franchise and Flo West, Vida-Flo Louisiana, and Vida Flo Alabama, entered into Operative Franchise Agreements and Amendments under which these franchisees agreed to pay royalties and to fulfill other obligations to Vida-Flo for a period of ten years in exchange from valuable consideration.

147. Defendants Flo West, Vida-Flo Louisiana, and Vida Flo Alabama breached the Operative Franchise Agreements by unlawfully refusing to pay royalties and by failing to fulfill other obligations to Vida-Flo and also breached the Amendments by continuing to conspire to bankrupt Vida-Flo.

148. Defendants Flo West, Vida-Flo Louisiana, and Vida Flo Alabama breached the Operative Franchise Agreements by misusing trade secrets and other proprietary information relating to the development, construction, marketing and/or operation of a Vida-Flo clinic, including but not limited to methods, techniques, specifications, medical treatments, procedures, policies, marketing strategies and information comprising the Vida-Flo System and the Manual.

149. Defendants Flo West, Vida-Flo Louisiana, and Vida Flo Alabama breached the restrictive covenant in Sections 14 of the Operative Franchise Agreements whereby Defendants agreed: (i) that neither it or its owners would

use Vida-Flo's "Know-how in any business or capacity other than the operation of [the] business pursuant to this Agreement"; (ii) that they would "maintain the confidentiality of the Know-how at all times"; (iii) that they would not "make unauthorized copies of any documents containing any Know-how"; (iv) that they would "take all reasonable steps . . . to prevent unauthorized use or disclosure of the Know-how"; and (v) that they would "stop using the Know-how immediately upon the expiration, termination or Transfer of this Agreement and will stop using the Know-how immediately at the time he or she ceases to be an Owner."

150. Defendants Flo West, Vida-Flo Louisiana, and Vida Flo Alabama breached Sections 14 of the Operative Franchise Agreements by forming, creating, owning, and having interests in competing businesses that provide intravenous hydration and vitamin infusion within 15 miles of the Breckenridge Location, Baton Rouge Location, Birmingham Location, Kennesaw Location, Highlands Location, Buckhead Location, Sandy Springs Location, and Chattanooga Location Vida-Flo franchises, or within 15 miles of any then existing or contemplated franchise.

151. Defendants Mr. Heavern, Brian McCullough, Mr. Gayle, and Mr. Purdy breached the NDAs which contain restrictive covenants identical in substance to the language in Sections 14.2, 14.3, and 14.4 of each Operative Franchise

Agreement.

152. Defendants Mr. Heavern, Brian McCullough, Mr. Gayle, Mr. Purdy breached the Personal Guaranties by failing to honor the obligations under the Operative Franchise Agreements.

153. Defendants Flo West, Vida-Flo Louisiana, and Vida Flo Alabama breached the Operative Franchise Agreements by misusing Vida-Flo's Intellectual Property for the benefit of their competing businesses Geaux Fleaux, Holistic Hydration, and Elite IV Lounge.

154. As a direct and proximate result of Defendants' breaches of contractual duties, Vida-Flo has been damaged in an amount to be proven at trial, plus costs, expenses, and attorneys' fees.

**COUNT IX**
**Unjust Enrichment**
**(Against all Defendants)**

155. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

156. By carrying out in the anti-trust conspiracy alleged in Count I, the theft of intellectual property alleged in Counts II through IV, the Conversion alleged in Count VI, and the allegations in Count IX to the extent no valid contract existed with respect to any identified Defendants named therein, Defendants have

benefited and have been unjustly enriched by retaining royalties franchisees were obligated to pay to Vida-Flo and by otherwise benefitting financially from avoidance of obligations to Vida-Flo, which have been wrongfully retained in an amount to be proven at trial.

## COUNT X
### Treble Damages
### (Against All Defendants)

157. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

158. Due to Defendants' violations of the Sherman Act and Lanham Act, Vida-Flo is entitled to recovery of treble damages pursuant to 15 U.S.C. § 15(a), 1117(b), and 1114(1)(a).

## COUNT XI
### Punitive Damages
### (Against all Defendants)

159. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

160. Defendants violated the Defend Trade Secrets Act and the Georgia Trade Secrets Act, and Defendants' actions as described in this Complaint showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

41

161. Defendants' actions justify the imposition of punitive damages.

## COUNT XII
## Attorneys' Fees
## (Against All Defendants)

162. Vida-Flo incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

163. Vida-Flo is entitled to recover its costs of litigation, including attorney's fees, pursuant to O.C.G.A. § 13-6-11 because Defendants have acted in bad faith, have been stubbornly litigious, and have caused Vida-Flo unnecessary trouble and expense.

164. Vida-Flo is entitled to recover its attorneys' fees from Defendants pursuant to O.C.G.A. §§ 10-1-763, 10-1-764, and 10-1-373(b).

165. Vida-Flo is entitled to recover its costs of litigation from Defendants, including attorney's fees, pursuant Sections 14.6 and 22 of the Operative Franchise Agreements.

166. Vida-Flo is entitled to recover attorneys' fees from Defendants pursuant to 15 U.S.C. § 1117(a).

167. Vida-Flo is entitled to recover its attorneys' fees from Defendants pursuant to 18 U.S.C. § 1836(b)(3)(D).

**WHEREFORE**, Plaintiffs pray for judgment as follows:

(a) Judgment against Defendants on each applicable count of this Complaint;

(b) Compensatory and actual damages as a result of Defendants' conduct;

(c) Treble damages as permitted by statute and other law;

(d) Punitive damages as a result of Defendants' conduct;

(e) Attorneys' fees and costs pursuant to O.C.G.A. §§ 13-6-11, 10-1-763, 10-1-764, and 10-1-373(b), 15 U.S.C. § 1117(a), 18 U.S.C. § 1836(b)(3)(D), and by contract; and

(f) On each of their claims for relief, such further and other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request trial by jury as to all triable issues in this case.

Respectfully submitted this 30th day of December, 2022.

/s/ Ramsey A. Knowles
Ramsey A. Knowles
Georgia Bar No.: 426726
rknowles@knowlesgallant.com
Jared K. Hodges
Georgia Bar No.: 225385
jhodges@knowlesgallant.com
*Counsel for Plaintiffs*

KNOWLES GALLANT LLC
6400 Powers Ferry Road – Suite 350
Atlanta, Georgia 30339
Telephone: (404) 590-3762
Facsimile: (404) 590-3687

## <u>CERTIFICATION OF FONT AND POINT</u>

Pursuant to L.R. Rule 5.1C, NDGa, the foregoing is prepared in Times New Roman, 14 point, and served using the Court's CM/ECF system, which will automatically send notice of this filing to counsel.

Respectfully submitted this 30th day of December, 2022.

 /s/ Ramsey A. Knowles
Ramsey Knowles
Ga. Bar No.: 426726
rknowles@knowlesgallant.com
*Counsel for Plaintiffs*

KNOWLES GALLANT LLC
6400 Powers Ferry Road – Suite 350
Atlanta, Georgia 30339
Telephone:   (404) 590-3533
Facsimile:    (404) 590-3687