**Brian L. McCullough**
**Attorney at Law**
17622 Gray Moss Avenue
Baton Rouge, Louisiana 70817

**EXHIBIT E**

Telephone: (225) 205-3148          Facsimile: (225) 928-8802

November 3, 2017

*Via Electronic Mail*

Hydration Station USA Franchise
System, LLC
Attn: Keith McDermott,
President and Chief Executive Officer
1819 Peachtree Road, Suite 205
Atlanta, Georgia 30309

Re:   **Vote of No Confidence –** *For Distribution to the Members of Hydration Station USA Franchise System, LLC (hereinafter, referred to as "VF Corporate")*

Dear Mr. McDermott:

I write to you today not in my capacity as an attorney nor on behalf of any client. Instead, this correspondence was drafted on behalf of myself, as a member of the Baton Rouge franchisee of VF Corporate. We, the undersigned representatives of various franchisees of VF Corporate compose this letter to express our growing dissatisfaction with the current President and Chief Executive Officer of VF Corporate.

This correspondence is an expression of our "Vote of No Confidence" in Mr. McDermott and his ability to continue to lead the franchise in a promising direction in the best interests of not only its own members/investors but in the best interests of the current and, hopefully, future franchisees. We understand the severity of this decision and did not arrive at it hastily.

Throughout the nearly eighteen months in which the Baton Rouge franchisee has been in operation and increasingly during the most recent several months, we experienced growing concerns regarding Mr. McDermott's leadership and management specifically regarding trust/honesty, collaboration, decision making, lack of respect for employees, customers and franchisees, and communication. We also believe that Mr. McDermott has failed to abide by the VF Corporate mission statement by failing to promote a "friendly, courteous and relaxing environment".

The corporate culture espoused through Mr. McDermott's example is, from all apparent, hearsay and a priori indications, ostensibly, that of a toxic environment for both corporate staff and franchisees. While VF Corporate has recruited team members with impressive experience and vision in franchising and marketing, the short-lived employments of Mr. Borakove and Ms.

Kelly as well as the recent departure of Mr. Jamey Shirah evidence such a toxic internal environment.  I have heard numerous reports from my co-owners and other franchisees regarding unprofessional and unbecoming executive conduct.  There was no communication with regard to Ms. Kelly's leaving the company; we simply stopped receiving the marketing schedules and lost the forward momentum from the unified branding/messaging of centralized marketing creative.

For the purposes of this correspondence, we need not relay a thoroughly exhaustive list of each and every breach of the respective franchise agreements nor each and every instance which would give rise to claims under various legal and equitable theories of recovery.  However, we do find it necessary to highlight several instances to bring these actions to light before all members of VF Corporate, especially in that Georgia juries have found that a franchisors' officers can be held personally liable for judgments in favor of franchisees under certain situations.  See, for instance, *Legacy Academy, Inc. et al. v. Mamilove, LLC, et al.,* 2014 WL 3557617 (Ga. Ct. App. July 16, 2014).

The franchise disclosure regulations of the Federal Trade Commission spell out the items of information which must be disclosed to prospective franchisees.  These items include, *inter alia*, affiliated persons franchisee is required to do business with by franchisor and any obligation to purchase requirements.

In speaking only on behalf of the Baton Rouge franchisee, we were made aware of the existence of the "affiliate", Vida-Flo USA Fulfillment, LLC ("VFUF") but we were led to believe that VFUF would only charge its costs plus shipping and a ***reasonable*** markup and that the total cost of source-restricted items ***would not exceed the price at which franchisees could purchase the items directly from suppliers***.

However, it has recently come to light that nearly every item acquired through VFUF contains a markup far beyond any conception of a subjectively reasonable standard.  Please find enclosed and attached a spreadsheet comparing the prices charged to franchisees against the price at which a respective franchisee or any of our competitors could purchase the items directly from suppliers.

Furthermore, upon information and belief, the ownership structure of VFUF is not identical with nor in proportion to that of VF Corporate and/or that of the Brookhaven location. GA Code § 14-11-307 (2016) prohibits conflicting interest transactions.  This section would, for example, prohibit a managing member from directing profits away from a franchisor entity to a supplier entity in which he, alone, owns all or substantially all of the membership interests or prohibit the managing member of a franchisee from using a self-dealing supplier to charge hidden, exorbitant markups which shift profits away from the collective members of the franchisee towards the self-dealing supplier entity.  These instances, if established, could support claims on behalf of the individual members of VF Corporate and/or the members/investors of VF Brookhaven, and not likely any other franchisees.  However, were it to be proven that such self-dealing was taking place to the detriment of personal friends and investors, it would certainly be exceedingly difficult for more distant franchisees to regain faith in management.

Without having more facts, it is impossible to determine if there is a violation of this Code section pertaining to any transactions between or amongst VF Corporate and VFUF or between or amongst VF Brookhaven and VFUF.  However, it is not necessary for actual fraud, but only the mere appearance of impropriety, to foster growing mistrust among the several franchisees.  Without an extensive document review or substantially increased transparency, we can only guess as to whether or not the VFUF scheme was set up to shift profits from VF Corporate and/or VF Brookhaven and to generate excessive revenues for VFUF at the expense of franchisees.

This discussion naturally leads into a specific, recent and egregious breach of trust and the commission of outright fraud.  All franchisees were previously informed of an arrangement with a specified supplier, B.Braun, wherein, although the prices of some items would increase, in exchange for exclusivity in favor of the supplier, we would mutually benefit from a guaranteed supply of lactated ringers.  Apparently, VFUF was negligent in failing to secure a written, enforceable guaranteed supply contract.

The franchisees were provided with an electronic written communication across state lines stating that a replacement supply contract was secured and further indicating that costs per case would rise from $58.21 to an amount which could surpass $85.00 per case.  However, one or more representative(s) of at least one franchisee made a few inquiries to various suppliers and promptly located a supplier capable of supplying of cases of lactated ringers as low as $4\_.\_\_ per case and was informed that the exact deal was extended to Keith McDermott of VFUF.  This instance, in and of itself, could potentially support a legal determination that franchisor's actions, manifested by and through its President and Chief Executive Officer, are in bad faith and in wanton, willful, or reckless disregard for the rights of the franchisees which could lead to treble damages.  See, for instance, GA Code § 10-1-916 (2016).

There are substantial other instances which, alone, can support a variety of legal and equitable claims for rescission and damages on behalf of one or more franchisees including without limitation understatement of necessary one-time costs, the provision of financial performance representations (including items such as a cost of goods sold pro forma indicating much lower price per dosage charges than actual charges from VFUF) and forcing substantive changes to the member pricing structures and offerings (coupled with the refusal[1] to grandfather existing members for the duration of their existing commitments in derogation of the law of contract in all 50 states) without any input or collaboration from the various markets.

The undersigned greatly value the Vida-Flo franchise network.  However, it is apparent that VF Corporate cannot and will not likely continue under current management and leadership.

---

[1] At this time, after substantial lobbying on the part of multiple franchisees and at least highly negative Facebook review indicating a member's extreme distaste at having his membership contract, which binds both member and VF, unilaterally re-negotiated, it appears that Franchisor has decided to honor existing pricing commitments with changes only for new members and renewals.

The utter lack of transparency and collaboration, along with the instances of clear fraud and self-dealing which have come to light, have fostered an utter lack of any modicum of trust in Mr. McDermott. In my opinion, were the members of VF Corporate to hesitate any longer to replace senior leadership, become exceedingly transparent, reduce all VFUF markups to a reasonable percentage and begin negotiations for appropriate concessions with each respective franchisee as well as the franchisee group as a whole, VF Corporate will likely collapse leaving the respective individual members to personally answer for the unfair trade acts and practices, misrepresentations, fraud and other unethical conduct the each allowed to occur, unchecked, by the managing member.

For, *inter alia*, the reasons stated hereinabove, we the undersigned are voting "No Confidence" in Mr. Keith McDermott and hope and believe that, in light of your own personal investments in the organization and, potentially, your own legal culpability, will make the right decision and chose that which is in the best interest of VF Corporate and its respective current and future franchisees.

Nothing herein shall be construed as a waiver of any legal or equitable right of any signatory hereto especially the right of rescission for one or more or none of the above-stated reasons. This communication is simply an expression of concern related to recent events and shall not be construed in any way as a waiver nor any commitment or promise to continue forward without substantial concessions and going-forward changes.

With kindest regards, I am

    Sincerely,

    /s/Brian L. McCullough – VF Baton Rouge
    /s/Brett McCullough – VF Baton Rouge
    /s/Michael Gayle – VF Birmingham

cc: Jamey Shirah, Jr.
    Benjie Shirah
    John McDermott
    Ryan Radding
    Sean Campbell – Advisor