# EXHIBIT F

## AMENDMENT TO VIDA-FLO FRANCHISE AGREEMENT

This AMENDMENT TO VIDA-FLO FRANCHISE AGREEMENT (this "Amendment") is entered into as of March 6, 2018 ("Effective Date"), by and between Hydration Station USA Franchise System, LLC, a Georgia limited liability company ("us" or "we"), and Flo West, LLC, a Colorado limited liability company ("you" and, together with us, the "Parties").

WHEREAS, the parties entered into a Vida-Flo Franchise Agreement dated April 15, 2015 (the "Franchise Agreement"), pursuant to which we granted you the right and license to open and operate a Vida-Flo clinic from a location to be approved by us (the "Clinic"); and

WHEREAS, you have requested that we modify the Franchise Agreement and we have agreed to do so upon the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Royalty Abatement.** Following execution of this Amendment, we agree to reduce your royalty fee to 5.5% of Gross Revenues for the duration of the "Royalty Reduction Period" (as defined below). Specifically, you will pay us a royalty fee of 5.5% of Gross Revenues generated during the Royalty Reduction Period. The "Royalty Reduction Period" means the period of time commencing February 1, 2018 and expiring January 31, 2020. You agree to pay us the standard 7% royalty fee on Gross Revenues generated following the expiration of the Royalty Reduction Period. Additionally, we hereby agree to forgo collection of any and all royalty fees you currently owe to us, as well as any and all royalty fees, software and technology fees, late fees and interest due prior to the Effective Date in the amount of $11,904.00 ("Past Due Amount").

2. **Software and Technology Fee.** Following execution of this Amendment, we agree to reduce your "Software and Technology" – related fee (as further set forth in Section 12.6 of your Franchise Agreement) to $800.00 per month commencing March 1, 2018 and for the remaining Term (as defined in Section 4.1 of your Franchise Agreement).

3. **Consent to Purchases.** Following execution of this Amendment, we grant to you, consistent with Section 12.4 of your Franchise Agreement, consent to purchase approved hydration fluids directly from vendors previously approved and specified by us that are outside of the Vida-Flo Fulfillment Program; provided however, that we provide such consent in writing and prior to your purchases.

4. **Payment to Us of the Technology and Services Fees.** You agree to pay to us the reduced total amount of past-incurred technology and services fees in the amount of $6,400.00; which shall be paid to us by ACH or by business check (or other mutually agreed-upon form) in the following installments: 1) $1,000.00 per month, on or by the tenth of each month for the months March through July 2018, and 2) a final payment of $1,400.00 on or before August 10, 2018.

5. **Release of Claims.** In consideration of the financial concessions set forth above and granted pursuant to this Amendment, you and your owners agree to execute the Waiver and Release of Claims attached hereto as Attachment "A". The effectiveness of this Amendment is expressly conditioned upon full execution of the Waiver and Release of Claims.

1

6. **Confidentiality.** You agree that all of the terms and conditions of this Amendment, as well as all royalty relief and financial concessions granted herein, are confidential and may not be disclosed to any other person without our prior written consent in each instance.

7. **Miscellaneous.**

(a) Modification. This Amendment and the Franchise Agreement when executed constitute the entire agreement and understanding between the Parties with respect to the subject matter contained herein and therein. Any and all prior agreements and understandings between the Parties and relating to the subject matter contained in this Amendment and the Franchise Agreement, whether written or verbal, other than as contained within the executed Amendment and Franchise Agreement, are void and have no force and effect. In order to be binding between the Parties, any subsequent modifications must be in writing signed by the Parties.

(b) Effect on Agreement. Except as specifically modified or supplemented by this Amendment, all terms, conditions, covenants and agreements set forth in the Franchise Agreement shall remain in full force and effect.

(c) Inconsistency. In the event of any inconsistency between the executed Franchise Agreement and this Amendment, this Amendment shall prevail.

(d) Defined Terms. Any capitalized term that is not defined herein shall have the meaning ascribed to such term in the Franchise Agreement. Any reference to "Section" or "Sections" shall refer to the Section or Sections of the Franchise Agreement.

(e) Counterparts. This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same document.

**IN WITNESS WHEREOF**, the Parties have executed this Amendment on the date first set forth above.

**FRANCHISOR:**

Hydration Station USA Franchise System, LLC, a Georgia limited liability company

By: _____
Name: _____
Its: _____

**YOU (If you are an entity):**

_Flo West_, a(n) _LLC_

By: _[signature]_
Name: _Ryan Heavern_
Its: _____

2

# ATTACHMENT "A"

# WAIVER AND RELEASE OF CLAIMS

## WAIVER AND RELEASE OF CLAIMS

This Waiver and Release of Claims (the "Release") is made as of March ___, 2018 by Flo West, LLC, a Colorado limited liability company ("Franchisee"), and each individual holding an ownership interest in Franchisee (collectively with Franchisee, "Releasor") in favor of Hydration Station USA Franchise System, LLC, a Georgia limited liability company ("Franchisor," and together with Releasor, the "Parties").

**WHEREAS,** Franchisor and Franchisee have entered into a Franchise Agreement (the "Agreement") pursuant to which Franchisee was granted the right to own and operate a Vida-Flo clinic;

**WHEREAS,** Franchisor has offered Franchisee certain royalty and other relief; and

**WHEREAS,** as a condition to Franchisor's provision of such relief, Releasor has agreed to execute this Release upon the terms and conditions stated below.

**NOW, THEREFORE,** in consideration of Franchisor's grant of certain valuable royalty and other relief, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound, Releasor hereby agrees as follows:

1. Representations and Warranties. Releasor represents and warrants that: (i) it is duly authorized to enter into this Release and to perform the terms and obligations herein contained, (ii) Releasor has not assigned, transferred or conveyed, either voluntarily or by operation of law, any of its rights or claims against Franchisor or any of the rights, claims or obligations being released hereunder; (iii) all individuals that currently hold a direct or indirect ownership interest in Franchisee are signatories to this Release; and (iv) Releasor has not and shall not (a) institute or cause to be instituted against any of the Released Parties (as defined in Section 2 below) any legal proceeding of any kind, including the filing of any claim or complaint with any state or federal court or regulatory agency, alleging any violation of common law, statute, regulation or public policy premised upon any legal theory or claim whatsoever relating to the matters released in this Release or (b) make any verbal, written or other communication that could reasonably be expected to damage or adversely impact any Released Party's reputation or goodwill. [Brad Heaven] represents and warrants that he/she is duly authorized to enter into and execute this Release on behalf of Franchisee.

2. Release. Releasor and its subsidiaries, affiliates, parents, divisions, successors and assigns and all persons or firms claiming by, through, under, or on behalf of any or all of them, hereby release, acquit and forever discharge Franchisor, any and all of its affiliates, parents, subsidiaries or related companies, divisions and partnerships, and its and their past and present officers, directors, agents, partners, shareholders, employees, representatives, successors and assigns, and attorneys, and the spouses of such individuals (collectively, the "Released Parties"), from any and all claims, liabilities, damages, expenses, actions or causes of action which Releasor may now have or has ever had, whether known or unknown, past or present, absolute or contingent, suspected or unsuspected, of any nature whatsoever, including without limiting the generality of the foregoing, all claims, liabilities, damages, expenses, actions or causes of action directly or indirectly arising out of or relating to the execution and performance of the Agreement, the offer and sale of the franchise related thereto and the provision of goods and services to Franchisee by Franchisor and/or Franchisor's affiliates.

4

3. <u>Nondisparagement</u>. Releasor expressly covenants and agrees not to make any false representation of facts, or to defame, disparage, discredit or deprecate any of the Released Parties or otherwise communicate with any person or entity in a manner intending to damage any of the Released Parties, the business conducted by any of the Released Parties or the reputation of any of the Released Parties. For purposes of clarity, the obligations in this Section apply to all methods of communications, including the making of statements or representations through direct verbal or written communication as well as the making of statements or representations on the Internet, through social media sites or through any other verbal, digital or electronic method of communication. The obligations in this Section also prohibit Releasor from indirectly violating this Section by influencing or encouraging third parties to engage in activities that would constitute a violation of this Section if conducted directly by Releasor.

4. <u>Confidentiality</u>. Releasor further acknowledges and agrees that all of the terms and conditions of this Release, as well as all royalty relief granted to Franchisee, are confidential and may not be disclosed to any other person without Franchisor's prior written consent in each instance.

5. <u>Miscellaneous</u>.

   a. Releasor agrees that it has read and fully understands this Release and that the opportunity has been afforded to Releasor to discuss the terms and contents of said Release with legal counsel and/or that such a discussion with legal counsel has occurred.

   b. This Release shall be construed and governed by the laws of the State of Georgia.

   c. Each individual and entity that comprises Releasor shall be jointly and severally liable for the obligations of Releasor.

   d. In the event that it shall be necessary for any Party to institute legal action to enforce or for the breach of any of the terms and conditions or provisions of this Release, the prevailing Party in such action shall be entitled to recover all of its reasonable costs and attorneys' fees.

   e. All of the provisions of this Release shall be binding upon and inure to the benefit of the Parties and their current and future respective directors, officers, partners, attorneys, agents, employees, shareholders and the spouses of such individuals, successors, affiliates, and assigns. No other party shall be a third-party beneficiary to this Release.

   f. This Release constitutes the entire agreement and, as such, supersedes all prior oral and written agreements or understandings between and among the Parties regarding the subject matter hereof. This Release may not be modified except in a writing signed by all of the Parties. This Release may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same document.

   g. The Parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as any Party may reasonably require to consummate, evidence, or confirm the Release contained herein in the matter contemplated hereby.

h. If one or more of the provisions of this Release shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect or impair any other provision of this Release, but this Release shall be construed as if such invalid, illegal or unenforceable provision had not been contained herein.

**IN WITNESS WHEREOF**, Releasor has executed this Release as of the date first written above.

**FRANCHISEE**

_Flo West_____, a
_LLL_____

By: _____
Name: _Ryan Heavern_____
Its: _____
Date: _3/6/2018_____


STATE OF _Colorado___ )
                      ) ss.
County of _Summit____ )

The foregoing instrument was acknowledged before me this _6_ day of _March 2018_ by _Ryan Heavern_.

_Laura A Lyman_
Notary Public

LAURA A LYMAN
Notary Public – State of Colorado
Notary ID 20174048071
My Commission Expires Nov 21, 2021

My commission expires:
_November 21, 2021_


**FRANCHISEE'S OWNERS**

By: _____
Name: _Ryan Heavern_____
Date: _3/6/2018_____


STATE OF _Colorado___ )
                      ) ss.
County of _Summit____ )

The foregoing instrument was acknowledged before me this _6th_ day of _March_, 2018 by _Ryan Heavern_.

6

_{signature}_
Notary Public

[Stamp: LAURA A LYMAN
Notary Public – State of Colorado
Notary ID 20174048071
My Commission Expires Nov 21, 2021]

My commission expires:
November 21, 2021

## FRANCHISEE'S OWNERS

By: _____
Name: _____
Date: _____


STATE OF_____)
                                 ) ss.
County of_____)

       The foregoing instrument was acknowledged before me this ____ day of _____, 2017, by _____.


_____
Notary Public

My commission expires:
_____


By: _____
Name: _____
Date: _____


STATE OF_____)
                                 ) ss.
County of_____)

       The foregoing instrument was acknowledged before me this ____ day of _____, 2017, by _____.


_____
Notary Public

7

My commission expires:
_____

By: _____
Name: _____
Date: _____

STATE OF _____ )
                                   ) ss.
County of _____ )

       The foregoing instrument was acknowledged before me this ____ day of _____, 2017, by _____.

_____
Notary Public

My commission expires:
_____