# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| HYDRATION STATION USA FRANCHISE SYSTEM, LLC and VIDA-FLO USE FULFILLMENT, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JARED CHRISTIAN SEAVERNS, *et al.*, <br><br> Defendants. | Civil Action No.: <br> 1:19-cv-5192-LMM |

## MICHAEL GAYLE, VIDA FLO ALABAMA, LLC, AND HOLISTIC HYDRATION ORGANIZATION, LLC's MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Michael Gayle ("Gayle"), Vida Flo Alabama, LLC ("VF Alabama") and Holistic Hydration Organization, LLC ("HHO", together with Gayle and VF Alabama, "Moving Defendants") hereby move this Court for summary judgment on Counts I and V of Plaintiffs' Second Amended Complaint (Dkt. No. 486), for violation of Section 1 of the Sherman Act and fraud, respectively. In support of this motion, Moving Defendants rely on the attached portions of the transcripts and exhibits from depositions of Kevin Couillard, Keith McDermott,

Brett McCullough, Ryan Heavern, and Jamey Shirah and the below Brief in Support of Motion for Partial Summary Judgment.

**BRIEF IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**BACKGROUND**

**A.    The IV Hydration Center Industry**

The United States intravenous ("IV") hydration center industry is a $1.6 billion dollar a year. (Couillard Dep. Ex. 4 at pp. 2, 3.)[1] Historically, IV hydration centers provided outpatient medical treatments. (*Id.* p. 5.) However, recent industry growth has come from spa-like facilities that market the treatments for things like improved athletic performance, beauty, and overall wellness. (*Id.*) In 2021, there were over 500 IV hydration centers in the United States. (*Id*. p. 6.)

**B.    The Parties**

Plaintiffs are related entities founded by Keith McDermott ("McDermott"). (Ex. B, 35:17-19, 59:15-20, 60:19-22.)[2] Hydration Station USA Franchise System, LLC ("Vida Flo") franchises IV hydration clinics that do business under Vida Flo

---

[1] Relevant portions of Mr. Couillard's deposition are attached as **Exhibit A** hereto.

[2] McDermott's deposition was taken over several days. The relevant pages and exhibits of McDermott's deposition transcripts from October 12, 2021, October 14, 2021 **Exhibits B and C**, respectively.

trade name. (Dkt. No. 486 ¶ 26.) Vida-Flo USA Fulfillment, LLC ("Fulfillment") purchases supplies for resale to franchisees. (Ex. B, 61:17-24.)

Michael Gayle is a member of VF Alabama, which previously owned a Vida Flo franchise in Birmingham, Alabama. (Dkt. No. 486 ¶ 16.) He is also a member of HHO which operated an IV hydration business in Birmingham after VF Alabama no longer operated. (*Id.*)

C.   **Vida Flo's Formation and Initial Growth**

Before Vida Flo began franchising, there were two corporate Vida Flo stores, one each in Buckhead and Brookhaven, Georgia. (Ex. B, 38:2-39:12, 41:4-7.) The first Vida Flo franchise, Flo West, signed a franchise agreement in 2015. (*Id.* at 104:20-55.) VF Alabama executed a franchise agreement with Vida Flo in May 2016. (Dkt. No. 483-3.) By the end of 2017, Vida Flo had franchises in Breckenridge, Colorado, Charleston, South Carolina,[3] Birmingham, Alabama, Baton Rouge Louisiana, Chattanooga, Tennessee, Nashville, Tennessee, Kennesaw, Georgia, and two in metro-Atlanta. (Dkt. No. 486 ¶ 24, Ex. B, 105:16-106:2; 117:9-20.)

---

[3] The Charleston franchise was terminated in or about 2016, and different franchisee opened a clinic in Charleston in 2017. (Ex. B, 117:24-118:3, Ex. F 80:21-25.)

3

### D. Vida Flo's Strained Relationship With its Franchisees

1. <u>Fulfillment's Price Gouging</u>

During 2017, Vida Flo franchisees learned that Fulfillment was significantly overcharging them for supplies. (Ex. D, 92:12-93:20.)[4] Most notably, in September 2017, McDermott announced that, due to a nationwide shortage, Fulfillment would be charging $85 per case for lactated ringer, a saline solution the clinics needed to operate. (Ex. C, 32:11-34:23.) Franchisees, however, discovered the product was readily available for less than $43 per case. (Ex. E, 93:1-94:3.)[5] When confronted with this information, McDermott admitted Fulfillment had overcharged for multiple products. (Ex. B, 46:3-47:19.) He also admits the overpricing issues led franchisees to distrust Vida Flo. (Ex. C, 184:1-8.)

2. <u>The Vote of No Confidence Letter</u>

By late 2017, certain franchisees came to question McDermott's leadership. As a result, in November 2017, members of VF Alabama and Vida Flo Louisiana, LLC sent Vida Flo investors a letter (the "Vote of No Confidence Letter") expressing their concerns with McDermott's management and their fear that the system would suffer if McDermott was not replaced as CEO. (Dkt. No. 1-10.)

---

[4] Relevant portions of Brett McCullough's deposition are attached as **Exhibit D**.
[5] Relevant portions of Ryan Heavern's deposition are attached as **Exhibit E**.

### E. Vida Flo's Loss of Franchisees

As predicted in the Vote of No Confidence Letter, without a change in leadership, the Vida Flo franchise system faltered. Vida Flo had eight franchisees at the beginning of 2018. (Ex. C at Ex. 106 p. 36.) It did not add a single franchise in 2018 and, in fact, lost a franchise that year. (*Id.*) By the end of 2019, six of the seven franchisees that existed at the beginning of the year, including VF Alabama, were no longer part of the Vida Flo system. (*Id.* at 37.)

## ARGUMENT AND CITATION OF AUTHORITY

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (1997). The moving party bears the burden of showing the absence of a genuine issues as to any material fact. *Id.* Once the moving party satisfies its initial burden, the burden shifts to the nonmovant to present specific facts showing that there is a genuine issue for trial. *Id.*

### A. Moving Defendants Are Entitled to Summary Judgment on Plaintiffs' Sherman Act Claim Because the Alleged Conspiracy Did Not Restrain Trade or Affect Competition.

The purpose of antitrust law is to protect competition and promote economic efficiency. *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 689 (1975). The Sherman Act, in particular, was enacted to protect the marketplace. *Boczar v.*

5

*Manatee, Hosps. & Health Sys., Inc*., 731 F.Supp. 1042, 1045 (M.D. Ga. 1990). The Act does not protect individual competitors. *Id.*

The elements of a Sherman Act § 1 claim are (1) a conspiracy and (2) that the conspiracy unreasonably restrains trade and affect competition. *Boczar*, 731 F.Supp. at 1045-1046. To prevail on a Sherman Act claim, the plaintiff must show the defendant's action injured competition. *Spanish Broad. Sys*., 242 F.Supp.2d at 1359.

> The injury to competition element is a critical element of both Sections One and Two because it prevents heated business disputes between individual competitors from turning into federal antitrust actions. The Sherman Act was enacted as an aegis to protect the consumer and competition, not as a sword to redress grievances against competitors.

*Id.* at 1364. Without an effect on competition, even acts of pure malice or unfair competition that replace one competitor with another do not violate the Sherman Act. *Id.* at 1359-60.

Plaintiffs allege Moving Defendants conspired to injure Vida Flo so they could abandon the VF Alabama franchise agreement and continue to operate an IV hydration clinic independent of Vida Flo. (Dkt. No. 486 ¶¶ 74-85.) Moving Defendants dispute they conspired to injure Plaintiffs. Nonetheless, even if they did, there is no viable Sherman Act claim unless the alleged conspiracy adversely affected competition. Plaintiffs filed this case in November 2019 and filed a Second Amended Complaint in December 2022. Even with the benefit of three years of

discovery, Plaintiffs failed to allege facts that would show the alleged conspiracy affected competition or restrained trade. (*Id.*) There are none.

Nationally, the intravenous hydration center industry is highly decentralized. In 2017, when the conspiracy allegedly began, the country had approximately 551 intravenous hydration centers owned by 413 separate entities. (Ex. A at Ex. 4, p. 6.) At the end of 2019, after the alleged conspiracy ended,[6] there were 600 centers operated by 482 entities. (*Id.*) And, notwithstanding the Covid-19 pandemic, number of competitors continued to grow in 2020. (*Id.*) Thus, the evidence shows the alleged conspiracy did not affect competition or restrain trade nationally.

Nor did the alleged conspiracy affect local competition. Assuming there was a conspiracy, it left the same number of competitors in each market. Considering Moving Defendants, after VF Alabama stopped operating, HHO opened an IV hydration clinic at VF Alabama's former location. (Declaration of Michael Gayle ("Gayle Decl.") ¶ 3.) Though HHO has since closed, there are still several other IV hydration clinics in Birmingham, including but not limited to Hydralive Therapy Birmingham, NAD IV Therapy Clinic, and Southern Ketamine and Wellness.

---

[6] By mid-2019, none of the alleged conspirators were part of Vida Flo.

**B.     Moving Defendants Are Entitled to Summary Judgment on Plaintiffs' Fraud Claim.**

Necessary elements of a fraud claim are a false representation by the defendant and damages. *J.E. Black Constr. Co., Inv. v. Ferguson Enters., Inc.,* 284 Ga. App. 345, 347 (2007).

Here, Plaintiffs' fraud claim does not allege any specific false statement by any of the Moving Defendants. (Dkt. No. 486 ¶¶ 124-131.) Rather, the basis of the fraud claim appears to be that certain Defendants made fraudulent statements concerning their intent to perform pursuant to certain amendments to their franchise agreements. (*Id.*) VF Alabama, however, did not enter into an amendment. (Gayle Decl. ¶ 6.) Absent identification of any allegedly false statement, Plaintiffs' fraud claim against Moving Defendants fails as a matter of law.

Respectfully submitted this 30th day of April, 2023.

/s/ Bryan M. Knight
Bryan M. Knight, Esq.
Georgia Bar No. 142401
Sherri G. Buda, Esq.
Georgia Bar No. 093399
KNIGHT PALMER, LLC
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
bknight@knightpalmerlaw.com
sbuda@knightpalmerlaw.com

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULES AND SERVICE

In accordance with Local Rule 7.1(D), I hereby certify that the foregoing was prepared in Times New Roman, 14-point font, one of the fonts specified in Local Rule 5.1(C).  I also hereby certify that I have served the foregoing by filing through the Court's CM/ECF system, which will automatically send email notification all attorneys of record.

This 30th day of April, 2023.

/s/ Sherri Buda
Sherri Buda
Georgia Bar No. 093399