# EXHIBIT D

Case 1:19-cv-05192-LMM   Document 514-6   Filed 04/30/23   Page 2 of 4

Hydration Station USA Franchise, et al. vs Jared Christian Seaverns, et al.
Brett James McCullough                                                           October 04, 2021

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

HYDRATION STATION USA

FRANCHISE SYSTEM, LLC,

et al.,

      Plaintiffs,

                  CIVIL ACTION FILE

  vs.               NO.:  1:19-cv-05192-LMM

JARED CHRISTIAN SEAVERNS,

et al.,

      Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~

REMOTE DEPOSITION OF

BRETT JAMES MCCULLOUGH

October 4, 2021

10:05 a.m.

(All attendees appeared remotely via

videoconferencing and/or teleconferencing.)

Mari B. Johnson, RPR, CMRS, CCR#2844

Page 2

APPEARANCES OF COUNSEL

On Behalf of the Plaintiffs:
    RAMSEY A. KNOWLES, Esquire
    Knowles Gallant, LLC
    6400 Powers Ferry Road, Suite 350
    Atlanta, Georgia  30339
    (404)590-3762
    rknowles@knowlesgallant.com
    CHRISTOPHER W. TIMMONS, Esquire
    Poole Huffman, LLC
    3562 Habersham at Northlake
    Building J, Suite 200
    Tucker, Georgia  30084
    (404)373-4008
    timmons@poolehuffman.com

On Behalf of the Defendants Shawn Fobas; Matt Borah; Jason Trembley; Peter Park; Crimson & Red Holdings, LLC; HydraLife Sandy Springs, LLC, f/k/a VF Sandy Springs, LLC; HydraLife Buckhead, LLC, f/k/a VF Buckhead, LLC; HydraLife Highlands, LLC, f/k/a VF Highlands, LLC:
    JEFFREY A. POWELL, Esquire
    Powell Law, LLC
    6075 Barfield Road, Suite 227
    Sandy Springs, Georgia  30328
    (678)273-3970
    jeffrey.powell@powelllawga.com

On Behalf of Defendants Ryan Heavern; Brian McCullough; Brett McCullough; Michael Gayle; Flo West, LLC; Vida-Flo Alabama, LLC; Holistic Hydration Organization, LLC; Vida-Flo Louisiana, LLC; Geaux Fleaux, LLC:
    SHERRI G. BUDA, Esquire
    Knight Palmer, LLC
    1360 Peachtree Street, NE, Suite 1201
    Atlanta, Georgia  30309
    (404)228-4822
    sbuda@knightpalmerlaw.com

Page 3

On Behalf of Defendants Jared Christian Seaverns;

The Whydrate Group, Inc.; Whydrate Fulfillment

Group, Inc.; and Brett Snellgrove

    JASON S. BELL, Esquire

    Smith Gambrell & Russell, LLP

    1105 West Peachtree Street, NE, Suite 1000

Atlanta, Georgia 30309

(404)815-3619

jbell@sgrlaw.com

On Behalf of Defendant Brendan Joseph Doucette:

    BRIAN D. TRULOCK, Esquire

    Bendin, Sumrall & Ladner, LLC

    1360 Peachtree Street, NE, Suite 800

    Atlanta, Georgia  30309

    (404)671-3100

    btrulock@bsllaw.net

Also Present:

    Michael Gayle

    Keith McDermott

Page 4

INDEX TO EXAMINATIONS

|   | PAGE |
|---|---|
| EXAMINATION BY MR. TIMMONS | 6 |
| EXAMINATION BY MR. BELL | 195 |
| EXAMINATION BY MR. POWELL | 199 |

INDEX TO EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit P-1 | Third Amended Notice of Videotaped Deposition of Defendant Brett McCullough | 7 |
| Exhibit P-2 | Vida-Flo Franchise Agreement | 25 |
| Exhibit P-3 | Vida-Flo Real Estate - Construction - Equipment, Hydration Station USA Franchise System, Franchisee Guide | 31 |
| Exhibit P-4 | Employee Handbook | 43 |
| Exhibit P-5 | Operations Manual | 44 |
| Exhibit P-6 | HydroCare Provider Modules (1-4) | 49 |
| Exhibit P-7 | September 23, 2017, E-mail from Brian McCullough | 92 |
| Exhibit P-8 | Ryan Heavern Text Messages | 94 |
| Exhibit P-9 | Michael Gayle Text Messages | 97 |

Case 1:19-cv-05192-LMM   Document 514-6   Filed 04/30/23   Page 3 of 4
Hydration Station USA Franchise, et al. vs Jared Christian Seaverns, et al.
Brett James McCullough                                                    October 04, 2021

Page 89

1  than what he's currently paying.  To me, that
2  is a -- that's my -- my work and effort.
3         So I mean but if you -- if I have to tell
4  you, I will.
5  BY MR. TIMMONS:
6     Q   Okay.  If you had left out the part of
7  about them being your current suppliers, it would
8  have been just fine.
9         But so I'm going to ask, I guess you all
10 can assert a trade secret privilege, but what
11 research -- what suppliers did you speak with at
12 that time?
13        MS. BUDA:  If you're not comfortable
14 saying --
15        THE WITNESS:  I don't care.  I really
16 don't care.  I mean at the end of the day it's
17 just a little work to find them anyway so --
18        D&H Medical Supply is one.  Empower
19 Pharmacy is another, who I know Vida --
20 Corporate did have a small relationship with.
21 We got some stuff from there every once in a
22 while, but not a lot.  A company called RXQ.  A
23 company called Axia.  And that's -- oh, and a
24 company called Pro Medical.
25

Page 90

1  BY MR. TIMMONS:
2     Q   In addition to -- well, sorry, let me back
3  up.
4         Did you -- how did you learn the cost from
5  those various suppliers?  And it may be different
6  for each one.  Did you e-mail them?  Did you call
7  them?  How did that work?
8     A   D&H Supply was -- I met with their sales
9  rep because that's a Louisiana company.  They have a
10 local sales rep that I met with.
11        The rest of them I called and -- and, in
12 turn, also e-mailed with as well.
13    Q   Did you provide the information to
14 Corporate that there were suppliers out there that
15 were cheaper?
16    A   Yes, I did, and maybe not specifically,
17 but definitely did that.  Because, at that time, I
18 also received permission to start sourcing my fluids
19 locally as well.
20    Q   Okay.
21    A   Because I found a supplier here in Baton
22 Rouge that was a -- a great deal cheaper than the
23 $85 per case.
24    Q   Did you ever buy fluids at $85 a case?
25    A   No, I -- no, sir.  There is an e-mail, I'm

Page 91

1  sure you have, that I refused to do so, strictly
2  because of the huge -- the -- the price discrepancy
3  from what we were paying.
4         But also the -- at the time, we weren't
5  too far removed from a very extensive massive flood
6  of the Baton Rouge and surrounding areas, which hurt
7  our business very much.  And I -- I -- to be honest,
8  we couldn't afford to buy 20 cases at $85 a piece.
9     Q   Were there supplies that you did purchase
10 during that time frame or -- or before that time
11 frame that had an unreasonable markup?
12    A   Yes, through the web store, yes, sir.
13    Q   What supplies were those?
14    A   Pretty much everything that was offered on
15 the web store, so pretty much every -- every piece
16 of inventory we needed.  Not to be too vague.  It
17 just -- that's -- I mean if you -- if you really
18 want me to -- to name every single thing that we
19 ever ordered, I can but --
20    Q   No, I'm not asking you that.
21        In broad categories, what -- what
22 categories of things did you order that were marked
23 up?
24    A   Our vitamins, our medications, the -- all
25 the dry goods, so catheters, drip sets, things of

Page 92

1  that nature, pretty much all of our inventory.  The
2  treatment chairs, from my understanding, were marked
3  up a good bit.  And when I say my understanding, I
4  specifically called the company that sold -- that we
5  bought the chairs from through Fulfillment.
6  That's -- I mean that's -- that's not necessarily an
7  exhaustive list, but at least that gives you an
8  idea.
9         (Exhibit P-7 was marked for
10        identification.)
11 BY MR. TIMMONS:
12    Q   I'm going to show Exhibit 7.  It's --
13 actually, Exhibit 7 is two e-mails.  The top one is
14 from Brian McCullough dated September 23, 2017, at
15 3:08 p.m.  The one on the bottom is September 14,
16 2017, at 2:09 p.m. from Seaverns, which the e-mail
17 address is seaverns@gmail.com.  The first page is
18 Bates labeled LA 0015.  Second page is Bates labeled
19 LA 0016.
20        Did you know about the supply markup issue
21 prior to hearing from Mr. Seaverns?
22    A   Yes.
23    Q   Did you tell anyone else that there was a
24 supply -- I'm sorry, let me back up from anyone
25 else.

Case 1:19-cv-05192-LMM   Document 514-6   Filed 04/30/23   Page 4 of 4

Hydration Station USA Franchise, et al. vs Jared Christian Seaverns, et al.
Brett James McCullough                                                October 04, 2021

Page 93

1      Did you tell anyone associated with other
2  Vida-Flo franchises, in other words, other
3  franchisees, about the supply markup issue prior to
4  receiving this e-mail from Mr. Seaverns?
5      A    To my recollection, I can't be sure on
6  that, but I'm -- I would imagine that I did, yes.
7      Q    It looks like there was a group text
8  created that includes you, or at least an e-mail
9  address that you gave us earlier, which is BMCCUL3.
10 It appears to be a group text that -- or group
11 e-mail was created by Mr. Seaverns.
12          And Mr. Seaverns' e-mail, when I get down
13 to the bottom, talks about a spreadsheet or more --
14 I guess more a Google doc.
15          Did you contribute to this Google doc?
16     A    I don't believe I contributed to it.  I
17 did receive it.  But, like I said, I went outside
18 and did my own research with -- with different
19 suppliers than that -- what that Google doc was
20 based on.
21     Q    So at the bottom -- and I'm not trying to
22 trick you.  At the bottom of the document it says,
23 PS -- bottom of LA 0015.  It says, PS, you will all
24 be getting a link to the shared Google doc shortly.
25 It will come from my storage gmail account,

Page 94

1  kennesawvidaflo@gmail.com, no affiliation with the
2  Corporate e-mail system.  I've already added Brett's
3  notes as well.
4          Prior to --
5      A    Like I said, to my recollection I may
6  have.  I just -- I'm not sure if I did or not.  If I
7  did, it was very minimal.
8          (Exhibit P-8 was marked for
9          identification.)
10 BY MR. TIMMONS:
11     Q    I'm pulling up Exhibit 8.
12          Exhibit 8 is a 68-page document, the first
13 Bates label of which is LA 0717.  Last page of which
14 is Bates labeled LA 0784.
15          Going down to page 2 of the PDF, which is
16 LA 0718, this document appears to be an e-mail
17 exchange between you and Ryan Heavern.
18          On September 25, 2017, there's a text
19 exchange between you and Mr. Heavern where
20 Mr. Heavern, who's in gray, says, Are you calling in
21 or using video?
22          Your response is, I called in.  Hey, they
23 don't want you on.  Will explain later.
24          Then Mr. Heavern responds, Okay.  That was
25 me who tried to get on.  They realize I'm not a

Page 95

1  Corporate member, right?
2          You respond, in blue, Yeah, but their
3  worries cause you -- your partner is.
4          Which Mr. Heavern responds, You told me to
5  get on the call.
6          You respond, I'm recording it.
7          He responds, Okay.  How's it going?
8          You respond, Good.  How you would expect.
9          Mr. Heavern says, Still on the call?
10         And then it goes to another day of texts.
11         About the third text in -- actually,
12 start -- let me start with the first text.  It says,
13 Are you calling in or using video.
14         Calling in to what?
15     A    That was a call with a prospective -- if I
16 recall correctly --
17         MS. BUDA:  I'm sorry but --
18         THE WITNESS:  -- that's a call with a --
19         MS. BUDA:  I need to interrupt you.
20         THE WITNESS:  -- with --
21         Go ahead, Sherri.
22         MS. BUDA:  -- object to the form.
23         You can still answer.
24 BY MR. TIMMONS:
25     Q    Ryan, I'm sorry, is saying, Are you

Page 96

1  calling in or using video.  And you're saying called
2  in.
3          But what's this -- what's this text about?
4      A    I believe, if I recall correctly, this was
5  a very early call with a prospective attorney to
6  possibly engage his services to protect us from the
7  over -- the price gouging of Corporate.
8      Q    Besides you, who else was on the call?
9      A    I couldn't tell you every single person on
10 the call, to my recollection.
11     Q    Who do you remember?
12     A    Michael Gayle, Christian Seaverns, I think
13 Web Raulston was on there, maybe Jason Trembley.
14 But, again, I can't be positive on any of that.
15     Q    The third text down from the beginning of
16 the September 25, 2017, text chain is a text from
17 you that says, Hey, they don't want you on.  Will
18 explain later.
19         Why didn't they want Mr. Heavern on the
20 call?
21         MS. BUDA:  Object to form.
22         THE WITNESS:  I -- I actually did not
23     explain that later because it was my
24     understanding that that call was covered by
25     attorney-client privilege.  And if I spoke to