**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| HYDRATION STATION USA FRANCHISE SYSTEM, LLC, and VIDA-FLO USA FULFILLMENT, LLC, <br><br> Plaintiffs, <br> v. <br><br> RYAN HEAVERN, BRETT MCCULLOUGH, BRIAN MCCULLOUGH, MICHAEL GAYLE, DERRICK PURDY, VIDA FLO ALABAMA, LLC, FLO WEST, LLC, HOLISTIC HYDRATION ORGANIZATION, LLC, VIDA-FLO LOUISIANA, LLC, and GEAUX FLEAUX, LLC, <br><br> Defendants. | Civil Action File No.: <br><br> 1:19-cv-05192-LMM <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED FOR COUNTERCLAIMS OF DEFENDANTS VIDA FLO ALABAMA, LLC AND MICHAEL GAYLE

Plaintiffs Hydration Station USA Franchise System, LLC ("HS-USA Franchise") and Vida-Flo USA Fulfillment, LLC ("VF-Fulfillment" and, collectively with HS-USA Franchise, "Vida-Flo") file this Statement of Material Facts to Which There Is No Genuine Issue to Be Tried related to the Counterclaim (the "AL Counterclaim") filed by Vida Flo Alabama, LLC ("VF-Alabama") and

1

Michael Gayle ("Mr. Gayle" and, with VF-Alabama, the "Alabama Counterclaimants").

1. VF-Alabama and HS-USA Franchise entered into a Franchise Agreement (the "AL Franchise Agreement") on or about March 16, 2016.

   **(AL Counterclaim [Doc. 167] ¶ 11; Compl. [Doc. 1, Doc. 161], at Ex. C [Doc. 1-3, Doc. 161-3].)**

2. Mr. Gayle is not a party to the AL Franchise Agreement, so he has no standing to assert any of the three breach of contract claims, which are all expressly based on the AL Franchise Agreement.

   **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3], at p.1 (naming parties to the Agreement).)**

3. The AL Franchise Agreement contains an integration clause.

   **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3] § 24.8.)**

4. The AL Franchise Agreement provides, among other things, "You [VF-Alabama] may terminate this Agreement if we [HS-USA Franchise] materially breach this Agreement and fail to cure the breach within 90 days after you send us a written notice specifying the nature of the breach." (SOMF ¶ 3.)

   **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3] § 20.1.)**

5. The AL Franchise Agreement does not create a contractual obligation requiring HS-USA Franchise to provide VF-Alabama (or Mr. Gayle) with marketing assistance and support, provide marketing guides and materials on a regular basis, and or to respond to every communication related to marketing.

   **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3].)**

6. Section 6.5 of the AL Franchise Agreement provides, "As further described in Section 11.2, we [HS-USA Franchise] will provide you with certain marketing assistance during the Term."

   **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3] § 6.5.)**

7. The only obligations in Section 11.2 of the AL Franchise Agreement are: "We will provide you with our recommended marketing plan for your Business. The marketing plan will be included in the Manual. . . . We will provide reasonable marketing consulting, guidance, and support throughout the term on an as-needed basis."

   **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3] § 11.2.)**

8. All other provisions in Section 11.2 are permissive—not mandatory.

   **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3] § 11.2.)**

9. HS-USA Franchise provides the Confidential Operations Manual to every franchisee.

   **(Deposition of Keith McDermott ("McDermott Dep. 1") [Doc. 503], at 161:13-14.)**

10. Mr. Gayle testified that HS-USA Franchise provided some marketing assistance, and the Alabama Counterclaimants have not come forward with evidence that it informed HS-USA Franchise that they considered a lack of any certain marketing activity a breach of the AL Franchise Agreement.

    **(Deposition of Michael Winn Gayle ("Gayle Dep."), at 97:19–98:12.)**

11. The AL Franchise Agreement provides, "We [HS-USA Franchise] <u>may</u> also purchase certain items from suppliers in bulk and resell them to you at our cost plus shipping fees and a reasonable markup."

    **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3] § 6.7 (emphasis added).)**

12. This permissive language creates no mandatory obligation for HS-USA Franchise to sell supplies at "cost plus shipping fees and a reasonable markup" and, by definition, does not apply to VF-Fulfillment.

    **(AL Counterclaim [Doc. 167] ¶ 11; Compl., at Ex. C [Doc. 161-3] ], at p.1 & Attachment A "Definitions" (defining "we" and "us" as Hydration**

**Station USA Franchise System, LLC in the introductory paragraph of the FW Franchise Agreement).)**

13. Counterclaims filed by VF-Alabama (and Mr. Gayle) were barred by the integration clause in the AL Franchise Agreement to the extent those claims arise from representations in which "as explained to VF Alabama and Mr. Gayle by HSU's CEO Keith McDermott" or that "Mr. McDermott told VF Alabama and Mr. Gayle" that HS-USA Franchise would sell products at a certain price (as opposed to the AL Franchise Agreement, which said "may").

    **(AL Counterclaim [Doc. 167] ¶¶ 11-14; Compl., at Ex A [Doc. 161-3] §§ 6.7, 24.8.)**

14. The AL Counterclaim provides no factual support for the threadbare allegation that HS-USA Franchise breached the AL Franchise Agreement by "charging VF Alabama $20,000 in technology fees for which VF Alabama did not receive any benefit" and does not allege that VF-Alabama incurred a loss by paying this alleged $20,000.

    **(AL Counterclaim [Doc. 167] ¶ 35.)**

15. In fact, Mr. Gayle testified that VF-Alabama stopped paying the technology fee starting in August 2018 and that VF-Alabama was using the "Booker"

software provided by HS-USA Franchise until around November 26, 2018 when HS-USA Franchise suspended service.

**(Gayle Dep., at 200:11–201:14.)**

16. HS-USA Franchise also provided access to Knack, Gusto, Deputy, and Frederick.

**(Deposition of Keith McDermott Volume II ("McDermott Dep. 2") [Doc. 504], at 24:3–26:25.)**

17. The AL Counterclaimants failed to plead "with particularity the circumstances constituting fraud or mistake" and have not identified any specific instances in which HS-USA Franchise told them that VF-Fulfillment "would mark up products only a reasonable amount and would not charge VF Alabama more than it could purchase products from other suppliers" or when VF Fulfillment told them that "the prices it charged VF Alabama did not exceed the prices at which VF Alabama could purchase products from other suppliers."

**(AL Counterclaim [Doc. 167] ¶¶ 38, 41.)**

18. Defendants deposed Mr. McDermott for four days, and there is no instance in which the Alabama Counterclaimants asked him about a specific representation and whether Vida-Flo knew that specific representation "was

not true when made and did not intend for [VF-Fulfillment] to act in accordance with this statement."

**(McDermott Dep. [Doc. 503]; McDermott Dep. 2 [Doc. 504]; Deposition of Keith McDermott Volume IV ("McDermott Dep. 4") [Doc. 505].) The third McDermott Deposition related primarily to the Atlanta Defendants, so none of the current parties have obtained it.**

19. In their Initial Disclosures [Doc. 149], the Alabama Counterclaimants stated: "The Alabama Defendants require information they intend to obtain through discovery to determine their damages. The Alabama Defendants will provide information concerning damages through supplement to this response or interrogatory response." Vida-Flo also requested "all documents related to your allegation that Vida-Flo defamed" the Alabama Counterclaimants and "all facts supporting, contradicting, or otherwise related to your allegation that Vida-Flo defamed" the Alabama Counterclaimants. Notwithstanding these obligations to come forward with evidence, the Alabama Counterclaimants have not provided any documents or other evidence that the Alabama Counterclaimants were damaged by the alleged defamation described in the AL Counterclaim.

**(Alabama Counterclaimants' Initial Disclosures [Doc. 149], at § 8; Michael Gayle, Vida Flo Alabama, LLC, And Holistic Hydration Organization, LLC's Objections and Responses to Hydration Station USA, Franchise System, LLC's First Continuing Interrogatories, at §§ 9, 12; Michael Gayle, Vida Flo Alabama, LLC, And Holistic Hydration Organization, LLC's Objections and Responses to Hydration Station USA, Franchise System, LLC's First Request For Production Of Documents, at §§ 26, 30.)**

20. In addition, the communication at issue was sent by HS-USA Franchise (not VF-Fulfillment) to protect its business interests and the health of Vida-Flo customers, which is privileged pursuant to O.C.G.A. § 51-5-7(2), (3).

**(McDermott Dep. 2 [Doc. 504], at 300:7–305:25.)**

Respectfully submitted this 30th day of April, 2023.

/s/ *Ramsey A. Knowles*
Ramsey A. Knowles
Georgia Bar No. 426726
rknowles@knowlesgallant.com
Jared Hodges
Georgia Bar No. 225385
jhodges@knowlesgallant.com
Christopher W. Timmons
Georgia Bar No. 712659
ctimmons@knowlesgallant.com
*Counsel for Plaintiffs*

**KNOWLES GALLANT TIMMONS, LLC**
6400 Powers Ferry Road, Suite 300
Atlanta, Georgia 30339
Phone:        (404) 590-3762
Facsimile:    (404) 590-3687

## CERTIFICATE OF TYPE-SIZE COMPLIANCE

Pursuant to L.R. 5.1(C), N.D.Ga., I hereby certify the foregoing brief is

prepared in Times New Roman, 14-point font.

Respectfully submitted this 30th day of April, 2023.

*/s/ Ramsey A. Knowles*
Ramsey A. Knowles
Georgia Bar No. 426726
rknowles@knowlesgallant.com
Chris W. Timmons
Georgia Bar No. 225385
ctimmons@knowlesgallant.com
Jared K. Hodges
Georgia Bar No. 712659
jhodges@knowlesgallant.com
*Counsel for Plaintiffs*

**KNOWLES GALLANT TIMMONS, LLC**
6400 Powers Ferry Road, Suite 300
Atlanta, Georgia 30339
Phone:       (404) 590-3762
Facsimile:   (404) 590-3687