IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HYDRATION STATION USA FRANCHISE SYSTEM, LLC and VIDA-FLO USE FULFILLMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JARED CHRISTIAN SEAVERNS, *et al.*,<br><br>Defendants. | Civil Action No.:<br>1:19-cv-5192-LMM |

**REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF
THE JULY 31, 2023 DECLARATION OF KEITH MCDERMOTT**

## I.   INTRODUCTION

The problem with nearly all of Mr. McDermott's July 31, 2023 Declaration (Doc. No. 545-3) (the "Declaration"), as well as Plaintiffs' Response In Opposition to Defendants' Motion to Strike Portions of the Declaration (Doc. No. 561), is that Mr. McDermott appears unwilling or unable to separate facts from his personal opinions and conclusions. As a result, the Declaration is infected with Mr. McDermott's bias as to how he and Plaintiffs would like the Court and a jury to view the case. Such biased opinions and conclusions do not constitute facts, much less facts based on personal knowledge. Rather, such biased statements lack probative value and should not be considered on summary judgment.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.     Paragraph 6 and Exhibit 1

#### 1. Paragraph 6

In paragraph 6, Mr. McDermott states that Vida Flo franchisees, Parker Turner and Adam Will, told him that other unidentified franchisees discussed bankrupting Vida Flo. Plaintiffs argue the statements, which on their face are double hearsay, may be considered by the Court as non-hearsay under Federal Rule of Evidene 801(d)(2)(E) or because Mr. Turner or Mr. Will could testify concerning the statements at trial. Plaintiffs are mistaken.

Federal Rule of Evidence 801(d)(2)(E) applies to statements made by a coconspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). The rule does not apply to paragraph 6 because Mr. McDermott admits Mr. Parker and Mr. Will never joined the alleged conspiracy. (Doc. No. 545-3 ¶ 6.)

Further, even setting aside Mr. McDermott's admission that Messrs. Turner and Will were not coconspirators, their statements are still not admissible under Fed. R. Evid.  801(d)(2)(E) because there has been no finding that there was a conspiracy; that the alleged declarant, Mr. Turner, and Mr. Will were part of the conspiracy; or that the alleged statement about bankrupting Vida Flo was made in the course and furtherance of a conspiracy. *See, U.S. v. Metro. Enters., Inc.*, 728 F.2d 444, 448 (10th

Cir. 1984) (holding that admissibility under 801(d)(2)(E) depends upon proof by a preponderance of the evidence that (1) there was a conspiracy; (2) the declarant and the particular defendant were members of the conspiracy; and (3) the statement sought to be admitted was made as during and in furtherance of the conspiracy). Moreover, the Court could not make such findings because Plaintiffs have not even identified the alleged declarant.

Nor can the statements in paragraph 6 be considered on summary judgment because Mr. Parker and Mr. Will could testify concerning the statements at trial. Mr. Parker and Mr. Will did not make the underlying statements concerning bankrupting Vida Flo. As neither Mr. Parker nor Mr. Will was the declarant and Rule 801(d)(2)(E) does not apply, they cannot testify concerning the statements at trial. Thus, the statements cannot be reduced to admissible form.

2. **Exhibit 1**

Exhibit 1 is an email in which Mr. McDermott recounts the hearsay statements described in paragraph 6. Plaintiffs weakly argue that the double hearsay in Mr. McDermott's email may be admissible as Mr. McDermott's present sense impression his prior day conversation with Messrs. Turner and Will or as a prior consistent statement *if* Defendants contend that Mr. McDermott fabricated the conversation. These arguments cannot withstand even the slightest scrutiny.

Exhibit 1 is not admissible as a prior consistent statement because Defendants have not disputed the existence of Mr. McDermott's conversation with Messrs. Turner and Will. Thus, the prior consistent statement exception does not apply.

Nor is Exhibit 1 admissible as a present sense impression of an event "made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The exception does not apply because the declarant, Mr. McDermott, did perceive the purported statements by the unidentified franchisees described in the email. Further, Mr. McDermott did not write the email until the day after his conversation with Messrs. Turner and Will. A statement made the day after the relevant event is not made "immediately after" the event within the meaning of Rule 803(1). *See Wallace v. Wiley Sanders Truck Lines, Inc.*, No. 4:14-CV-142-CDL, 2016 WL 320140 (M.D. Ga. Jan. 25, 2016) (statements made 15 to 20 minutes after an accident were not present sense impressions); *U.S. v. Cain*, 587 F.2d 678, 681 (5th Cir. 1979) (statements made 15 to 45 minutes after an incident were too far removed to be present sense impressions). As no exception applies, Exhibit 1 must be stricken.

**B.     Paragraphs 8, 15-19, 21-23, 27-31, 33-36, and 38-39**

"[S]elf-serving or conclusory affidavits, submitted by a nonmoving party in opposition to a motion for summary judgment, will not create an issue of fact for trial." *Hovanski v. Am. Income Life Ins. Co.*, No. CV-03-VEH-0838S, 2005 WL

8158109 (N.D. Ala. Sep. 26, 2005). A statement in an affidavit is conclusory if it expresses a factual inference without stating the underlying facts on which the inference is based. *Rodda v. Univ. of Miami*, 542 F.Supp.3d 1289, 1295 (S.D. Fla. 2021) (citing Black's Law Dictionary (11th ed. 2019)). "Conclusory allegations without specific supporting facts have no probative value." *Id.* (citing *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013)).

### 1. Paragraphs 8, 16, 19, and 22

Paragraphs 8, 16, 19, and 22 state Mr. McDermott's self-serving conclusions concerning effects of the alleged conspiracy that are unsupported by specific facts. For example, Mr. McDermott states the alleged conspiracy diminished Vida Flo as a competitor in the IV hydration market allowing Defendants and others to raise prices. (Doc. No. 545-3 ¶ 8.) Mr. McDermott bases this conclusion on a single statement by Mr. Heavern concerning Flo West pricing. Even if Mr. McDermott did not mischaracterize Mr. Heavern's statement (which he did), that single statement does not support the conclusion that Defendants' conduct, as compared with Vida Flo's poor management, lack of an adequate market plan, or any other possible factor, impeded its growth. Furthermore, there is <u>NO</u> evidence that prices to consumers generally increased as Vida Flo's growth decreased.

Similarly, there is no evidence in the record to support Mr. McDermott's self-serving and conclusory allegation that the alleged conspiracy nearly bankrupted Vida Flo. Nor is there any evidence to support Mr. McDermott's conclusion that Vida Flo's absence from any market reduced competition. To the contrary, Plaintiffs' expert presented evidence that competition in the IV hydration market increased significantly after the inception of the alleged conspiracy. (Doc. No. 515-8 at 9.) Finally, there are no facts to support Mr. McDermott's self-serving conclusion that the alleged conspiracy, as compared with his poor management, his abrasive and offensive interactions with franchisees and staff, the high-level of turnover of corporate employees, and Vida Flo's decision to terminate franchise agreements rather than resolve disputes caused Vida Flo to lose franchisees. Accordingly, the unsupported, self-serving conclusions in paragraphs 8, 16, 19, and 22 may not be considered on Summary Judgment.

2. **Paragraph 15**

In their Response, Plaintiffs do not contend that Mr. McDermott has personal knowledge of communications between Flo West and VF Flo Louisiana concerning negotiations with Vida Flo. Accordingly, paragraph 15 should be reformed as stated in the Motion to Strike. (Doc. No. 552 at 4.)

### 3. Paragraphs 17 and 18

Contrary to Plaintiffs' argument, Defendants did not object to paragraphs 17 and 18 because they disagree with the statement (which they do) but because the paragraph states self-serving conclusions, not facts. Plaintiffs disingenuously claim Defendants seek to invade the province of the jury, when that is precisely what Plaintiffs do through the Declaration, including in paragraphs 17 and 18, which are mere self-serving conclusions, not fact. Such self-serving conclusions do not create an issue of fact and should not be considered on summary judgment.

### 4. Paragraph 21

Defendants do not assume that Mr. McDermott lives in a vacuum. They do, however, believe he makes up conclusions based on select "observations" viewed through a highly biased prism and ignores facts concerning his poor management skills and mismanagement of Plaintiffs' businesses, then improperly attempts to pass of his conclusions as facts. Possibly worse, Plaintiffs' response to Defendants' Motion to Strike falsely claims that Defendants admitted to certain coordinated efforts, when no such admission exists other than in Mr. McDermott's interpretation of statements generally made by Atlanta franchisees. It is up to the fact finder, not Mr. McDermott, to determine the meaning of specific statements. Even if stated in a declaration, Mr. McDermott's conclusions are not facts.

### 5. Paragraph 23

There is no fact in paragraph 23. Contrary to Plaintiffs' response, the paragraph does not refer to a historical business plan. Like most of the Declaration, paragraph 23 is a self-serving conclusion that lacks factual support.

### 6. Paragraphs 27, 28, 30, and 34

Each of these paragraphs demonstrates Mr. McDermott's inability or unwillingness to separate fact from his self-serving, sometimes fanciful, interpretation of select facts, which ignores facts that do not fit Plaintiffs' narrative. In paragraphs 27, 28, and 34, Mr. McDermott offers opinions about the Louisiana Defendants' thoughts and motives that contradict their sworn testimony. There is no evidence the Louisiana Defendants told Mr. McDermott anything that contradicts their testimony such that he lacks personal knowledge of the statements in paragraphs 27, 28, and 34. In paragraph 30, Mr. McDermott opines that as a result of an alleged conspiracy, six former franchisees were no longer part of Vida Flo at the end of 2019. This is a self-serving conclusion is fundamentally flawed because, among other things it: assumes the existence of an unproven conspiracy; ignores non-conspiratorial reasons for the former franchisees' conduct including Mr. McDermott's real or perceived dishonesty concerning multiple issues, the franchisees' complaints of lack of corporate support, and open animosity between

Mr. McDermott and several franchisees; and ignores the critical fact that only one of the six franchisees voluntarily left the system, with Vida Flo terminating the other franchise agreements, in most cases, before the franchisee missed a payment to Vida Flo. Considering the facts in the record, Mr. McDermott's contradictory, self-serving opinion lacks probative value.

**7.   Paragraphs 29, 31, and 34**

Plaintiffs contend that Mr. McDermott can testify that Defendants withheld royalties and fees without providing 90 days' notice and opportunity to cure. (Doc. No. 561 at 12.) Defendants do not dispute this response. Defendants, however, contend that Mr. McDermott cannot testify concerning the opinions set forth in the remainder of paragraphs 29. 31, and 34.

**8.   Paragraphs 35 and 39**

In response to paragraphs 35 and 39, Plaintiffs continue to (apparently intentionally) conflated Mr. McDermott's knowledge and observations with his opinions and conclusions.

In paragraph 35, Mr. McDermott testified that Defendants relied on Vida Flo's good will to open new businesses. Mr. McDermott lacks any personal knowledge of the information on which Defendants relied to open their new businesses. More importantly, there is no evidence there was good will associated with the Vida Flo

brand in Breckenridge and Baton Rouge (or any other area) and no evidence that Mr. McDermott or Plaintiffs conducted any polling or other market research that would qualify him to claim knowledge of such purported good will.

In paragraph 39, Mr. McDermott opines that Defendants could not have reopened when they did without Vida Flo's know how. Plaintiffs' expert presented evidence that in 2019, when Defendants reopened, there were 600 IV hydration clinics in the United States. (Doc. No. 515-8 at 9.) Thus, there were ample sources other than Plaintiffs for Defendants to learn how to operate an IV hydration clinic including more than 590 non-Vida Flo clinics, Mr. Heavern's experience working in an IV hydration clinic before he became a franchisee, and Elite IV Lounge, with whom Flo West affiliated. Thus, Mr. McDermott's testimony that Defendants needed Vida Flo's knowledge to reopen is unsupported, inadmissible opinion.

9. **Paragraph 36**

In paragraph 36, Mr. McDermott admits he lacks personal knowledge that any customer confused Elite IV Lounge or Geaux Fleaux for a Vida Flo location. Thus, it is beyond the pale for him to testify to this Court that he is "sure" many customers were confused. The only thing Mr. McDermott can be sure of is that he formed a biased opinion. Defendants are equally sure that such opinion is not proper in a declaration in support of summary judgment.

10. **Paragraph 38**

While Defendants do not dispute that Mr. McDermott is qualified to testify as to *facts* concerning medical directors' conduct, paragraph 38 goes beyond fact testimony to offer Mr. McDermott's opinion as to whether something is "generally" done and whether changes are "minimal". For purposes of his Declaration, Mr. McDermott should specify facts, not characterize (or mischaracterize),the relevant conduct.

C. **Paragraphs 2, 3, and 4**

The differences between the statements in paragraphs 2, 3, and 4 and the well-established facts in this case, which are well-known to Mr. McDermott who executed the Declaration, is not merely a matter of semantics. Plaintiffs use paragraphs 2 through 4 to falsely states that the Plaintiffs in this case began researching and developing how to operate an IV hydration clinic in 2012 and that Plaintiffs operated two IV hydration clinics where theyexpended additional resources on research and development before Vida Flo began selling franchises. This is not true.

Although Mr. McDermott has an interest in the entities that made the purported investments described in paragraphs 2 through 4, neither Mr. McDermott nor those entities are parties to this case. It is deceptive for Plaintiffs to use Mr. McDermott's demonstrably false testimony concerning Plaintiffs' purported

investment to inflate their potential damages, and the Court should not consider the false and misleading testimony in paragraphs 2 through 4.

### III.   CONCLUSION

Defendants respectfully renew their request that the Court strike and not consider paragraphs 6, 8, 16, 17-19, 21-23, 27-29, 31, 34-36, and 38-39 of the Declaration (Doc. 545-3) in connection with Defendants' Motions for Summary Judgment. Defendants further request that paragraphs 15, 30, and 33 be revised as set forth in their Motion to Strike.

Respectfully submitted this 16th day of October 2023.

/s/ Sherri G. Buda
Bryan M. Knight, Esq.
Georgia Bar No. 142401
Sherri G. Buda, Esq.
Georgia Bar No. 093399
KNIGHT PALMER, LLC
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
bknight@knightpalmerlaw.com
sbuda@knightpalmerlaw.com

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULES AND SERVICE

In accordance with Local Rule 7.1(D), I hereby certify that the foregoing was prepared in Times New Roman, 14-point font, one of the fonts specified in Local Rule 5.1(C).  I also hereby certify that I have served the foregoing by filing through the Court's CM/ECF system, which will automatically send email notification all attorneys of record.

This 16th day of October, 2023.

/s/ Sherri G. Buda
Sherri G. Buda
Georgia Bar No. 093399